UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

          Plaintiff,

     v.

EL DORADO COUNTY, CALIFORNIA;
and CITY OF SOUTH LAKE TAHOE,
CALIFORNIA,

          Defendants.

_____

AND ALL RELATED ACTIONS

NO. 2:01-cv-1520-MCE-GGH

MEMORANDUM AND ORDER

----oo0oo----

     Through the present action, Plaintiff United States of
America (hereinafter "government") seeks recovery under the
Comprehensive Environmental Response, Compensation, and Liability
Act, 42 U.S.C. § 9601, et seq. ("CERCLA") for response costs that
have been incurred and will be incurred in the future as a result
of hazardous substance contamination at a former landfill site
near Meyers, California ("Meyers landfill").
///

1

El Dorado County, who operated the Meyers landfill for a number
of years, then proceeded to institute its own Third Party
Complaint against users of the facility for contribution towards
clean-up costs.  One of the third party defendants in that action
is Barton Memorial Hospital ("Barton").  Barton now moves for
summary judgment on grounds that it did not generate any
hazardous waste subject to remediation efforts by the government.
For the reasons set forth below, Barton's Motion is denied as
premature at this juncture.

**BACKGROUND**

In 1995, the government claims to have detected various
volatile organic compounds ("VOCs") leaching into the groundwater
beneath the site of the former Meyers landfill.  Four metals were
also detected at levels in excess of that permitted under state
and federal law, including aluminum, chromium, iron and lead.
(See El Dorado's Statement of Fact No. 34).  Various actions have
since been taken to investigate and characterize the scope of
contamination, but that process has not been completed, and
consequently no remediation plan has yet been finalized.  Id. at
No. 35.

As indicated above, the government's institution of the
present lawsuit for its response costs under CERCLA prompted El
Dorado County, which was named as a Defendant in the government's
case-in-chief, to file its own Third Party Complaint for
contribution against entities who used the Meyers landfill for
waste disposal.

One of those entities, Barton, now moves for summary judgment on grounds that it cannot, as a matter of law, be responsible for any clean-up costs as sought by El Dorado.

Barton's request for summary judgment hinges on a contention that it could not have deposited VOCs at the Meyers landfill. Because Barton goes on to allege that clean-up efforts proposed to date target only VOCS, it argues that there are no potential response costs for which it can be liable.

Factually, Barton alleges that any VOCs present at the landfill site result from the dumping of chlorinated solvents, like perchloroethylene (PCE) and trichlorethene (TCE), in liquid form.  Barton contends that it dumped only incinerated ash at the landfill, and that such ash, by definition, could not have incorporated liquids containing VOCs.  Barton has produced evidence establishing that its hospital waste, with the exception of bottles and cans,[1] was all burned at temperatures high enough to have eliminated any liquid component.

El Dorado County virtually conceded, at the time of oral argument on this Motion, that there is no evidence that Barton directly placed any VOCs at the landfill site.  It nonetheless argues that Barton's ash included other hazardous substances, in particular metals like chromium, that have been found in high levels at the site.

///

///

---

[1]The dispute here concerning contaminants for which Barton was responsible appears to center almost exclusively around the composition of its incinerated ash, rather than on any bottles and cans that Barton discarded.

1  According to El Dorado County, while remediation efforts to date
2  have indeed focused on VOCs, until characterization at the site
3  has been completed and a remediation plan finalized, Barton
4  cannot show it is entitled to judgment as a matter of law
5  inasmuch as the clean-up of residual metals cannot be eliminated
6  as a possibility until such finalization occurs.  In addition, El
7  Dorado contends that the volume of waste deposited at the site,
8  including waste deposited by Barton, may create the need for a
9  low-permeability cap and methane collection system for which
10 Barton bears responsibility.  Finally, El Dorado makes the
11 argument that leachate produced from Barton's hospital
12 incinerator ash may have contributed indirectly to the absorption
13 of VOCs into the groundwater under the Meyers landfill through
14 formation of a buffer conducive to such absorption.  El Dorado
15 argues that all these reasons preclude summary judgment in favor
16 of Barton at this stage of the litigation.

17
18                            **STANDARD**
19
20     The Federal Rules of Civil Procedure provide for summary
21 judgment when "the pleadings, depositions, answers to
22 interrogatories, and admissions on file, together with
23 affidavits, if any, show that there is no genuine issue as to any
24 material fact and that the moving party is entitled to a judgment
25 as a matter of law."  Fed. R. Civ. P. 56(c).  One of the
26 principal purposes of Rule 56 is to dispose of factually
27 unsupported claims or defenses.  <u>Celotex Corp. v. Catrett</u>, 477
28 U.S. 317, 325 (1986).

1    In considering a motion for summary judgment, the court must
2  examine all the evidence in the light most favorable to the non-
3  moving party.  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).
4  Once the moving party meets the requirements of Rule 56 by
5  showing that there is an absence of evidence to support the non-
6  moving party's case, the burden shifts to the party resisting the
7  motion, who "must set forth specific facts showing that there is
8  a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477
9  U.S. 242, 256 (1986).  Genuine factual issues must exist that
10 "can be resolved only by a finder of fact, because they may
11 reasonably be resolved in favor of either party."  Id. at 250.
12 In judging evidence at the summary judgment stage, the court does
13 not make credibility determinations or weigh conflicting
14 evidence.  See T.W. Elec. v. Pac. Elec. Contractors Ass'n, 809
15 F.2d 626, 630-631 (9th Cir. 1987), citing Matsushita Elec. Indus.
16 Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

17

18                          **ANALYSIS**

19

20    Liability under CERCLA hinges on the establishment of
21 specified prerequisites, as set forth in 42 U.S.C. § 9607(a).  A
22 party is not liable unless 1) the site in question qualifies as a
23 "facility" at which hazardous substances were disposed; 2) the
24 allegedly liable party falls within the definition of a
25 responsible party under the statute; 3) a release or threatened
26 release of a hazardous substance has occurred; and 4) such
27 release or threatened release has made it necessary to incur
28 response costs.

1  42 U.S.C. § 9607(a); <u>3550 Stevens Creek Assoc. v. Barclay's Bank</u>
2  <u>of Cal.</u>, 915 F.2d 1355, 1358 (9th Cir. 1990).

3      In this case, the parties do not dispute that the Meyers
4  landfill qualifies as a "facility" falling within the purview of
5  CERCLA, since it appears uncontroverted that the landfill is a
6  "site or area where a hazardous substance has been deposited..."
7  42 U.S.C. § 9601(9)(B).  In order to be a responsible party,
8  however, Barton itself must have been responsible for disposal or
9  treatment of a hazardous substance at the landfill.  42 U.S.C. §
10  9607(a)(3).  Because the third prong for establishing liability
11  also hinges on whether a hazardous substance may have been
12  released, tying the presence of a hazardous substance to the
13  alleged polluter, here Barton, is critical.  Even if the release
14  or threatened release of a hazardous substance has occurred,
15  however, there can be no liability on Barton's part unless such
16  release on its part caused the incurrence of response costs to
17  clean up the Meyers landfill site.

18      In attempting to preclude any liability under CERCLA, Barton
19  argues first that there is no evidence that it is responsible for
20  any hazardous substance found at the Meyers landfill.  Secondly,
21  Barton alleges that there has been no showing of any response
22  costs necessitated by any hazardous substance associated with
23  Barton's waste disposal at the landfill in any event.  Each of
24  these issue will now be addressed.
25  ///
26  ///
27  ///
28  ///

## A.  Hazardous Substance

Barton's contention that it cannot be held responsible for any hazardous substance at the site is premised on an argument that only VOCs are targeted for remediation under any proposed clean-up.  While VOCs do seem to have been the primary target in considering response costs thus far, as indicated above elevated levels of certain metals have also been detected at the Meyers landfill site, including chromium.  The Environmental Protection Agency has specifically listed chromium as a hazardous substance (see 40 C.F.R. § 302.4), and that designation is controlling for purposes of liability under CERCLA.  42 U.S.C. §§ 9601(14)(B), 9602(a).  Because the characterization and assessment of the site has still not been completed, with no final remediation plan in effect, Barton cannot rule out the possibility that the concentration of metals like chromium will also be addressed in the ultimate clean-up proposal.

In addition, Barton is unable to show as a matter of law that its waste cannot be linked to elevated levels of metals (like chromium) found at the site.  El Dorado County has cited studies showing that hospital incinerator ash can contain detectable concentrations of various metals, including chromium, cadmium, and arsenic, that are listed as hazardous pursuant to 40 C.F.R. § 302.4.  (Decl. of Anthony Daus, ¶ 12).

///
///
///
///

7

Another El Dorado expert, Anne McQueen, indicates that trace metals were likely present in the ash generated by Barton.[2] (Decl. of Anne McQueen, ¶ 6).  Moreover, it is undisputed that even Barton's own expert, Dr. Richard J. Martin, concedes that such metals may have been present in Barton's ash.  (See El Dorado's Statement of Fact No. 14).

Based on the foregoing, even aside from the issue of VOCs, Barton cannot show it did not generate other hazardous substances like cadmium that have been detected at the Meyers landfill site. Hence it cannot rule out CERCLA liability under the second and third prongs of the four-part test for assessing such liability.

**B.  Response Costs**

Even if Barton cannot overcome the first three components for establishing liability under CERCLA, it may still escape such liability if it can show that any hazardous substances it may have generated will not incur any response costs.  Again, Barton argues that since remediation efforts to date have focused on elimination of VOCs from the site, and since it could not have deposited any such VOCs in incinerator ash (which would contain no liquid chlorinated solvents responsible for such contamination), there are no response costs for which it may be liable.

///

---

[2]No specific level of a listed hazardous substance is required in order to incur potential liability under CERCLA.  See Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 669 (5th Cir. 1989).

8

1    This ignores the undisputed fact, as enumerated above, that
2  efforts to fully characterize site contamination, and to finalize
3  remediation plans after such characterization has been completed,
4  remain ongoing.  Until those endeavors are complete the Court
5  simply cannot rule out, as it must to grant Barton's Motion for
6  Summary Judgment, the possibility of response costs tied to
7  hazardous substances found at the site for which Barton is
8  responsible.  Until such time as site characterization/response
9  plans are complete, any request for summary judgment on Barton's
10  part would be premature.

11

12                            **CONCLUSION**

13

14    Until investigation and response efforts have been
15  completed, this Court cannot determine as a matter of law that
16  Barton bears no responsibility for remediating hazardous
17  substances at the Meyers landfill.  Hence Barton's Motion for
18  Summary Judgment must be denied as premature.
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1    Because Barton's Motion may properly be denied on this ground

2    alone, the Court need not address whether Barton may also be

3    liable for clean-up costs under any of the other theories

4    advanced by El Dorado County, including whether Barton must also

5    contribute to installation of a permeability cap and methane

6    collection system at the landfill site, or whether its ash, as a

7    leachate, contributed to the absorption of VOCs into the

8    groundwater under the site.

9

10        IT IS SO ORDERED.

11

12   DATED: May 8, 2006

13

14

15                                    _____

16                                    MORRISON C. ENGLAND, JR
                                      UNITED STATES DISTRICT JUDGE
17

18

19   _____

20

21

22

23

24

25

26

27

28