**FILED**

AUG 2 0 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:01-cv-01520-MCE-GGH |
| Plaintiff, | |
| v. | **ORDER** |
| EL DORADO COUNTY, CALIFORNIA; and CITY OF SOUTH LAKE TAHOE, CALIFORNIA, | |
| Defendants. | |

AND ALL RELATED ACTIONS.

----oo0oo----

On August 3, 2010, the United States filed the Motion now before the Court: a request for approval of the government's proposed Consent Decree with El Dorado County, California.

The proposed Consent Decree was initially lodged with the Court on June 28, 2010 (ECF No. 384, as amended by No. 385). Notice of Lodging was thereafter published with the Federal Register on July 2, 2010, indicating that the United States would accept comments on the proposed Consent Decree with the District for a period of thirty (30) days from said date of publication.

1

That comment period closed on August 2, 2010, and no comments were received.  The instant Motion was thereafter filed.

Given the terms of the Consent Decree negotiated between the parties, the fact that no one posited any suggestion during the aforementioned comment period that the Consent Decree was not fair, reasonable, and consistent with the objectives of CERCLA, the fact that no opposition to the present Motion was made, and good cause appearing therefor, the United States' Motion to Approve Consent Decree (ECF No. 388) is GRANTED.[1]  The Court will sign the Consent Decree itself concurrently with this Order.

The parties are directed to file a Joint Status Report, not later than twenty (20) days after the date this Order is electronically filed.  Said Joint Status Report should address what parties and issues remain pending in this litigation, and when the parties expect this case will be resolved in its entirety so that the matter can be closed.

IT IS SO ORDERED.

Dated: August 20, 2010

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[1] Because oral argument was not of material assistance, the Court determined this matter was appropriate for submission on the briefs.  E.D. Cal. Local Rule 230(g).

1  IGNACIA S. MORENO
2  Assistant Attorney General
   Environment and Natural Resources Division
3  U.S. Department Of Justice

4
   KARL J. FINGERHOOD
5  Trial Attorney (PA Bar ID No. 63260)
6  Environmental Enforcement Section
7  U.S. Department of Justice
   P.O. Box 7611
8  Washington, D.C. 20044-7611
9  Tel: (202) 514-7519
   Fax: (202) 514-2583
10 E-mail: karl.fingerhood@usdoj.gov

11
   Attorneys for Plaintiff United States of America
12 (Additional Attorneys on next page)

13
14              UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF CALIFORNIA
15

16 UNITED STATES OF AMERICA        )
                                    )
17          Plaintiff,              )   Case No. 2:01-cv-1520 MCE GGH
                                    )
18 v.                               )
                                    ) PARTIAL CONSENT DECREE
19                                  ) BETWEEN THE UNITED STATES
   EL DORADO COUNTY,                ) OF AMERICA AND EL DORADO
20 CALIFORNIA and CITY OF           ) COUNTY, CALIFORNIA
21 SOUTH LAKE TAHOE,                ) 
   CALIFORNIA, et al.               )
22                                  )
                                    )
23          Defendants.             )
                                    )
24 _____      )
                                    )
25 AND ALL RELATED ACTIONS.         )
26 _____      )

27
28

ANDREW J. DOYLE
Trial Attorney (FL Bar ID No. 84948)
Environmental Defense Section
U.S. Department of Justice
P.O. Box 23986
L'Enfant Plaza Station
Washington, D.C. 20026-3986
Tel:   (202) 514-4427  Fax:    (202) 514-8865
E-mail: andrew.doyle@usdoj.gov

BENJAMIN B. WAGNER
United States Attorney
Eastern District of California

SYLVIA QUAST
Assistant United States Attorney
501 " I " Street Suite 10-100
Sacramento, CA 95814
Phone: (916) 554-2700 Fax: (916) 554-2900
E-mail: sylvia.quast@usdoj.gov

# TABLE OF CONTENTS

I. BACKGROUND...................................................................................1

II. JURISDICTION .................................................................................4

III. PARTIES BOUND..............................................................................5

IV. DEFINITIONS ...................................................................................6

V. GENERAL PROVISIONS...................................................................17

VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANT .......................20

VII. REMEDY REVIEW...........................................................................30

VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS....................33

IX. ACCESS ......................................................................................36

X. REPORTING REQUIREMENTS ...........................................................38

XI. FOREST SERVICE APPROVAL OF PLANS AND OTHER SUBMISSIONS ..........41

XII. PROJECT COORDINATORS...............................................................43

XIII. PERFORMANCE GUARANTEE ..........................................................46

XIV.   CERTIFICATION OF COMPLETION ..............  .......................................58

XV. EMERGENCY RESPONSE...................................................................62

XVI. PAYMENTS FOR RESPONSE COSTS.....................................................63

XVII. FUNDING AND DISBURSEMENT OF SPECIAL ACCOUNT FUNDS ..............72

XVIII. INDEMNIFICATION AND INSURANCE...................................................83

XIX. FORCE MAJEURE...........................................................................87

XX. DISPUTE RESOLUTION ...................................................................90

XXI. STIPULATED PENALTIES .................................................................95

XXII. COVENANTS BY PLAINTIFF ...........................................................102

XXIII. COVENANTS BY SETTLING DEFENDANT ...........................................108

XXIV. EFFECT OF SETTLEMENT; CONTRIBUTION .......................................113

XXV. ACCESS TO INFORMATION ............................................................115

XXVI. RETENTION OF RECORDS..............................................................118

XXVII. NOTICES AND SUBMISSIONS..........................................................120

XXVIII. RETENTION OF JURISDICTION .......................................................123

XXIX. APPENDICES ..............................................................................123

XXX. COMMUNITY RELATIONS...............................................................124

XXXI. MODIFICATION............................................................................124

XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT.......................126

XXXIII. SIGNATORIES/SERVICE ...............................................................126

XXXIV. FINAL JUDGMENT.......................................................................128

i

## I. BACKGROUND

A.     On August 3, 2001, Plaintiff United States of America ("Plaintiff" or "United States"), on behalf of the United States Department of Agriculture, Forest Service ("Forest Service"), filed a complaint pursuant to Sections 107 and 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(f), against defendants the County of El Dorado (the "County" or "Settling Defendant") and the City of South Lake Tahoe (the "City"). The complaint filed by the United States seeks, *inter alia*: (1) reimbursement of costs incurred by the United States for response actions at the Meyers Landfill Site ("Site"), a former waste disposal facility located on National Forest System lands administered by the Lake Tahoe Basin Management Unit of the Forest Service, and a "facility" as defined under 42 U.S.C. § 9601(9), with accrued interest, and a declaration of the County's and the City's liability for future response costs incurred by the United States related to the Site; and (2) performance of response actions by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

B.     Settling Defendant does not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public

-1-

1    health or welfare or the environment.  The Forest Service does not admit any

2    liability arising out of the transactions or occurrences alleged in any counterclaim

3

4    asserted by Settling Defendant.

5

6        C.    In response to a release or a substantial threat of a release of

7    hazardous substances at or from the Site, in 2005 the Forest Service commenced a

8    Supplemental Remedial Investigation and Supplemental Feasibility Study

9

10   ("SRI/SFS") for the Site pursuant to 40 C.F.R. § 300.430.

11

12       D.    In early 2006, consistent with EPA guidance, the Forest Service

13   made a determination to separate the landfill and the contaminated groundwater

14   beneath the Site into two separate operable units ("OUs") for remediation

15

16   purposes.  OU-1 is the landfill waste mass itself and OU-2 is the contaminated

17   groundwater plume.  This Partial Consent Decree addresses only OU-1.

18

19       E.    The Forest Service completed the SRI/SFS Report in May, 2007.

20

21       F.    Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, the Forest

22   Service published notice of the completion of the SRI/SFS Report and of the

23   proposed plan for remedial action on May 21, 2007, in a major local newspaper

24

25   of general circulation.  The Forest Service provided an opportunity for written

26   and oral comments from the public on the proposed plan for remedial action.  A

27

28   copy of the transcript of the public meeting is available to the public as part of the

1    administrative record upon which the Forest Service based the selection of the

2    remedial action for OU-1.

3

4        G.    The decision by the Forest Service selecting the Remedial Action to

5
     be implemented at OU-1 at the Site is embodied in a final Record of Decision
6

7    ("OU-1 ROD"), executed on November 15, 2007, which the State had a

8
     reasonable opportunity to review and comment. The OU-1 ROD is attached as
9

10   Appendix A to this Partial Consent Decree and is incorporated herein by

11   reference. The OU-1 ROD is supported by an administrative record that contains
12
     the documents and information upon which the Forest Service based its selection
13

14   of the remedial action.

15

16       H.    After signature of this Partial Consent Decree by the Settling

17   Defendant, the Forest Service shall issue a Unilateral Administrative Order
18
     ("UAO") to the Settling Defendant for the Work. Under the UAO the County can
19

20   begin the Work in an expeditious fashion while the proposed Partial Consent

21
     Decree is under consideration by the United States and the Court.   Upon approval
22

23   of the Partial Consent Decree and entry by the Court and upon the withdrawal of

24   the UAO by the Forest Service, the Partial Consent Decree shall supersede the
25

26   UAO and the Terms of the Partial Consent Decree shall control the conduct of

27   activities at the Site from the Effective Date forward.

28

-3-

Based on the information currently available to the Forest Service, the Forest Service believes that the Work, as defined herein, will be properly and promptly conducted by Settling Defendant if conducted in accordance with the requirements of this Partial Consent Decree and its appendices.

I.    Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the Remedial Action set forth in the OU-1 ROD and the Work to be performed by Settling Defendant shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

J.    The Parties recognize, and the Court by entering this Partial Consent Decree finds, that this Partial Consent Decree has been negotiated by the Parties in good faith and implementation of this Partial Consent Decree will expedite the cleanup of the Site and will avoid additional prolonged and complicated litigation between the Parties, and that this Partial Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and

-4-

1  9613(b).  This Court also has personal jurisdiction over Settling Defendant.

2
3  Solely for the purposes of this Partial Consent Decree and the underlying

4  complaint, Settling Defendant waives all objections and defenses that it may have

5  to jurisdiction of the Court or to venue in this District.  Settling Defendant shall
6
7  not challenge the terms of this Partial Consent Decree or this Court's jurisdiction

8  to enter and enforce this Partial Consent Decree.
9

10  ### III. PARTIES BOUND

11
12  2.  This Partial Consent Decree applies to and is binding upon the

13  United States and upon Settling Defendant and its successors and assigns.  Any

14
15  change in status of Settling Defendant including, but not limited to, any transfer

16  of assets or real or personal property, shall in no way alter Settling Defendant's

17  responsibilities under this Partial Consent Decree.
18

19  3.  Settling Defendant shall provide a copy of this Partial Consent

20  Decree to each contractor hired to perform the Work required by this Partial
21
22  Consent Decree and to each person representing Settling Defendant with respect

23  to the Site or the Work, and shall condition all contracts entered into hereunder
24
25  upon performance of the Work in conformity with the terms of this Partial

26  Consent Decree. Settling Defendant or its contractors shall provide written notice

27
28  of the Partial Consent Decree to all subcontractors hired to perform any portion of

-5-

the Work required by this Partial Consent Decree. Settling Defendant shall

nonetheless be responsible for ensuring that its contractors and subcontractors

perform the Work in accordance with the terms of this Partial Consent Decree.

With regard to the activities undertaken pursuant to this Partial Consent Decree,

each contractor and subcontractor shall be deemed to be in a contractual

relationship with Settling Defendant within the meaning of Section 107(b)(3) of

CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided in this Partial Consent Decree,

terms used in this Partial Consent Decree that are defined in CERCLA or in

regulations promulgated under CERCLA shall have the meaning assigned to them

in CERCLA or in such regulations. Whenever terms listed below are used in this

Partial Consent Decree or in the appendices attached hereto and incorporated

hereunder, the following definitions shall apply solely for purposes of this Partial

Consent Decree:

"CERCLA" shall mean the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, et seq.

"Court Registry Account" shall mean the Court Registry Account No.1

established by this Court by Order entered December 7, 2009 (Docket No. 361)

and containing $1,250,000 paid by the Settling Third Party Defendants, plus any interest accrued thereon.

The term "day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Partial Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"District" shall mean the South Tahoe Public Utility District.

"Effective Date" shall be the date upon which this Partial Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Partial Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Forest Service" shall mean the United States Department of Agriculture, Forest Service and any successor departments or agencies of the United States.

"Future Oversight Costs" shall mean that portion of Future Response Costs related to OU-1 that the Forest Service incurs in monitoring and supervising Settling Defendant's performance of the Work to determine whether such

performance is consistent with the requirements of this Partial Consent Decree, including costs incurred in reviewing plans, reports and other documents submitted pursuant to this Partial Consent Decree, as well as costs incurred in overseeing implementation of the Work; however, Future Oversight Costs do not include, *inter alia*: the costs incurred by the United States pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls), XV (Emergency Response), and Paragraph 47 (Funding for Work Takeover), or the costs incurred by the United States in enforcing the terms of this Partial Consent Decree, including all costs incurred in connection with Dispute Resolution pursuant to Section XX (Dispute Resolution) and all litigation costs.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs that the United States incurs pursuant to CERCLA related to the Site from the Effective Date of this Partial Consent Decree forward and which are not included in the definition of Future Oversight Costs, and any Interest accrued thereon.

"Groundwater ROD" shall mean, for the purpose of this Partial Consent Decree, the Forest Service's second Record of Decision for the Meyers Landfill Site, whenever it is signed by the delegate of the Regional Forester, Forest Service Region 5, and all attachments thereto, relating to groundwater (Operable Unit 2 or "OU-2"), and any other remedial actions at the Site outside of the scope

-8-

of the remedial action set forth in the OU-1 ROD.

"Institutional Controls" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Materials at the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the OU-1 Remedial Action; and/or (c) provide information intended to modify or guide human behavior at the Site.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site between January 1, 2008 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date, and any Interest accrued thereon.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Meyers Landfill Site Special Account" shall mean the special account

-9-

1 established for the Site by the Forest Service pursuant to 16 U.S.C.§ 579c.

3 "Meyers Landfill Site Disbursement Special Account" shall mean the

4 special account established for the Site by the Forest Service pursuant to 16

6 U.S.C. § 579c, and Paragraph 58 and used to partially reimburse Settling

7 Defendant for certain work at the Site.

9 "Municipal Solid Waste" shall mean waste material: (a) generated by a

10 household (including a single or multifamily residence); or (b) generated by a

12 commercial, industrial or institutional entity, to the extent that the waste material

13 (i) is essentially the same as waste normally generated by a household; (ii) is

14 collected and disposed of with other municipal solid waste as part of normal

16 municipal solid waste collection services; and (iii) contains a relative quantity of

17 hazardous substances no greater than the relative quantity of hazardous

19 substances contained in waste material generated by a typical single-family

20 household.

22 "National Contingency Plan" or "NCP" shall mean the National Oil and

23 Hazardous Substances Pollution Contingency Plan promulgated pursuant to

25 Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and

26 any amendments thereto.

28 "Operation and Maintenance" or "O&M" shall mean all activities required

-10-

1  to maintain the effectiveness of the OU-1 Remedial Action as required under the

2  OU-1 ROD and the Operation and Maintenance Plan approved or developed by
3

4  the Forest Service pursuant to Section VI (Performance of the Work by Settling

5  Defendant) and the SOW.

6

7      "OU-1" shall mean Operable Unit One at the Site. OU-1 of the Site is the

8  landfill waste mass.
9

10     "OU-1 Record of Decision" or "OU-1 ROD" shall mean the Forest Service

11
   Record of Decision and all attachments thereto relating to the remedy for
12

13  Operable Unit 1 at the Site, which was signed by the delegate of the Regional

14  Forester, Forest Service Region 5 on November 15, 2007. The OU-1 ROD is
15

16  attached as Appendix A.

17
       "OU-1 Remedial Action Work Plan" shall mean the document developed
18

19  pursuant to Paragraph 10 and approved by the Forest Service and any

20  modifications thereto.
21

22     "Paragraph" shall mean a portion of this Partial Consent Decree identified

23
   by an Arabic numeral or an upper or lower case letter.
24

25     "Partial Consent Decree" shall mean this Partial Consent Decree and all

26
   appendices attached hereto (listed in Section XXIX). In the event of conflict
27

28  between this Partial Consent Decree and any appendix, this Partial Consent

-11-

1 Decree shall control.

2

3 "Parties" shall mean the United States and Settling Defendant.

4

5 "Past Response Costs" shall mean all costs, including, but not limited to,

6 direct and indirect costs, that the United States paid at or in connection with the

7 Site through December 31, 2007, plus Interest on all such costs which has accrued

8

9 pursuant to 42 U.S.C. § 9607(a) through such date.

10

11 "Performance Standards" shall mean the remedial action objectives,

12 remedial goals, and standards of the Remedial Action, set forth in the OU-1 ROD,

13 the Remedial Design and Section III of the SOW and any modified standards

14

15 established pursuant to "technical impracticability" provision of Paragraph 12 or

16 any other provision of this Consent Decree.

17

18 "Plaintiff" shall mean the United States.

19

20 "Pre-Achievement O&M" shall mean all operation and maintenance

21 activities required for the Remedial Action for the post construction time period

22 prior to the Forest Service's written Certification of Completion that the Remedial

23

24 Action is complete and the initiation of Post-Achievement O&M, as provided

25 under the Operation and Maintenance Plan approved or developed by the Forest

26 Service pursuant to Section VI (Performance of the Work by Settling Defendants)

27

28 and the SOW.

-12-

"Post-Achievement O&M" shall mean all activities, after the Remedial Action has achieved the remedial action objectives and remediation goals in the OU-1 ROD and has been determined to be operational and functional pursuant to 40 CFR § 300.435(f), which are required to maintain the effectiveness of the Remedial Action, as required under the Operation and Maintenance Plan approved or developed by the Forest Service pursuant to Section VI (Performance of the Work by Settling Defendants) and the SOW.

"Project Coordinator" shall mean the Forest Service's Project Coordinator for Work at the Site.

"Project Manager" shall mean the person(s) designated by Settling Defendant pursuant to Section XII hereof.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

"Remedial Action" or "RA" shall mean all activities Settling Defendant is required to perform under the Partial Consent Decree to implement the OU-1 ROD as further described in the Remedial Design, in accordance with the SOW, the Remedial Action Work Plan, and other plans approved by the Forest Service, including Pre-Achievement O&M and implementation of Institutional Controls, until the Performance Standards are met, excluding Post-Achievement O&M, and

-13-

1  the activities required under Section XXV (Retention of Records).

3  "Remedial Design" or "RD" shall mean the Remedial Design prepared by

4  the Forest Service in January, 2009, including the performance of the Remedial

6  Action.

7  "Section" shall mean a portion of this Partial Consent Decree identified by

9  a Roman numeral.

10  "Settling Defendant" shall mean El Dorado County, California.

12  "Settling Defendant Excess Future OU-1 Construction Costs" shall mean

14  those costs of response Settling Defendant incurs after the Effective Date, in

15  construction of the Remedial Action, which exceed the OU-1 cost estimate set

16  forth in the Remedial Design of $5,500,000.00 and which would be compensable

18  as "necessary costs of response . . . consistent with the national contingency plan"

19  within the meaning of CERCLA section 107(a)(4), 42 U.S.C. Section 9607(a)(4).

21  "Settling Defendant Excess Future OU-1 Construction Costs" do not include

22  those costs reimbursed by the Waste Board Grant, or costs incurred by Settling

23
24  Defendant after completion of construction of the Remedial Action, and does not

25  include costs associated with O&M of the Remedial Action.

27  "Settling Defendant Future OU-1 Response Costs" shall mean those costs

28  of response Settling Defendant incurs after the Effective Date in construction of

-14-

1    the Remedial Action, which would be compensable as "necessary costs of

2
3    response . . . consistent with the national contingency plan" within the meaning of

4    CERCLA section 107(a)(4), 42 U.S.C. Section 9607(a)(4), including those costs

5    incurred by the Settling Defendant after completion of the Work, and costs

6
7    associated with O&M of the Remedial Action.

8
9        "Settling Defendant Past Response Costs" shall mean all costs, including,

10   but not limited to, direct and indirect costs, that Settling Defendant, or one or

11   more insurance companies on Settling Defendant's behalf, paid at or in

12
13   connection with the Site through the Effective Date.

14       "Site" shall mean the Meyers Landfill Site, located in Meyers, El Dorado

15
16   County, California, encompassing the areal extent of contamination including,

17   without limitation, approximately 11 acres of buried waste and the groundwater

18
19   plume originating therefrom (which presently has an areal extent of more than 31

20   acres), and generally shown on the map attached hereto as Appendix B.

21
22       "Site Portion of Trout Creek Trunk Pipeline" shall mean that portion of the

23   District's Trout Creek Trunk Pipeline located within the Site, generally depicted

24
25   on the map attached hereto as Appendix F, and including manholes numbered 45-

26   50.

27
28       "Statement of Work" or "SOW" shall mean the statement of work for

-15-

implementation of the Remedial Action at the Site as set forth in Appendix C to this Partial Consent Decree and any modifications made in accordance with this Partial Consent Decree. The SOW is incorporated by reference into this Partial Consent Decree and is enforceable as part of this Partial Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Settling Defendant to supervise and direct the implementation of the Work under this Partial Consent Decree.

"United States" shall mean the United States of America and each department, agency and instrumentality of the United States.

"U.S. Payment" shall mean the payment required by Paragraph 56.a. and any Interest required by Paragraph 56.b.

"Waste Board Grant" shall mean the full monetary extent of any grant received by the Settling Defendant from the California Department of Resources, Recycling and Recovery, formerly known as the Integrated Waste Management Board (the Department is referred to herein as the "Waste Board"), whereby the Waste Board reimburses the Settling Defendant for certain costs of Work.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33)of CERCLA; (3) any "solid waste"

-16-

under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous material" under the California Hazardous Waste Control Act Section 25100 *et seq*.

"Work" shall mean all activities and obligations Settling Defendant is required to perform under this Partial Consent Decree to implement the OU-1 ROD, including the Remedial Action, O&M and any activities required to be undertaken pursuant to this Partial Consent Decree, except the activities required under Section XXVI (Retention of Records).

## V. GENERAL PROVISIONS

5. Objectives of the Parties. The objectives of the Parties in entering into this Partial Consent Decree are to protect public health or welfare or the environment at the Site through the implementation of the Remedial Action by Settling Defendant; to resolve Plaintiff's claim for recovery of Past Response Costs and Future Oversight Costs; and to resolve Settling Defendant's claim for recovery of Settling Defendant Past Response Costs, Settling Defendant Future OU-1 Response Costs, and Settling Defendant Excess Future OU-1 Construction Costs. The Parties stipulate, and the Court orders, that upon entry of this Partial Consent Decree the Parties' claims or partial claims against each other regarding matters in this action not resolved in this Partial Consent Decree are dismissed

-17-

without prejudice. This Partial Consent Decree is also without prejudice as to any claim expressly preserved herein.

6.  Commitments by Settling Defendant and the Forest Service. Settling Defendant shall perform the Work in accordance with this Partial Consent Decree, the OU-1 ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Partial Consent Decree or developed by Settling Defendant and approved by the Forest Service pursuant to this Partial Consent Decree. Settling Defendant shall also pay the United States for Past Response Costs and Future Oversight Costs as provided in this Partial Consent Decree. The Forest Service shall pay Settling Defendant for Settling Defendant Past Response Costs, Settling Defendant Future OU-1 Response Costs, and Settling Defendant Excess Future OU-1 Construction Costs as provided in this Partial Consent Decree.

7.  Compliance With Applicable Law. All activities undertaken by Settling Defendant pursuant to this Partial Consent Decree shall be performed in accordance with the requirements of all applicable federal, state, and local laws and regulations. Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all Federal, state, and local environmental laws as set forth in the OU-1 ROD and the SOW. The activities conducted pursuant to this Partial Consent Decree, if approved by the Forest

-18-

Service, shall be deemed to be consistent with the NCP.

8. <u>Permits.</u>

a. As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b. Settling Defendant may seek relief under the provisions of Section XIX (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a and required for the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain such permits or approvals.

c. This Partial Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

9. Selection of Supervising Contractor.

a. All aspects of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work by Performing Settling Defendant), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Partial Consent Decree shall be under the direction and supervision of the Supervising Contractor the selection of which shall be subject to disapproval by the Forest Service. Within ten days after it signs this Partial Consent Decree, Settling Defendant shall notify the Forest Service in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. With respect to any contractor proposed to be Supervising Contractor, Settling Defendant shall demonstrate that the proposed contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995 or most recent version), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by the Forest Service. The Forest Service will issue

-20-

a notice of disapproval or an authorization to proceed regarding hiring of the proposed contractor. If at any time thereafter, Settling Defendant proposes to change a Supervising Contractor, Settling Defendant shall give such notice to the Forest Service and must obtain an authorization to proceed from the Forest Service before the new Supervising Contractor performs, directs, or supervises any Work under this Partial Consent Decree.

b.      If the Forest Service disapproves a proposed Supervising Contractor, the Forest Service will notify Settling Defendant in writing. Settling Defendant shall submit to the Forest Service a list of contractors, including the qualifications of each contractor that would be acceptable to it within 10 days after receipt of the Forest Service's disapproval of the contractor previously proposed. The Forest Service will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendant may select any contractor from that list that is not disapproved and shall notify the Forest Service of the name of the contractor selected within 7 days of the Forest Service's authorization to proceed.

c.      If the Forest Service fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Defendant from meeting one or more deadlines in a plan

-21-

approved by the Forest Service pursuant to this Partial Consent Decree,

Performing Settling Defendant may seek relief under Section XIX (Force

Majeure).

10. Remedial Action.

a. Within 20 days after it signs this Partial Consent Decree,

Settling Defendant shall submit to the Forest Service a Work Plan for the

performance of the OU-1 Remedial Action at the Site ("OU-1 RA Work Plan")

for review and approval by the Forest Service. The OU-1 RA Work Plan shall be

developed in accordance with the OU-1 ROD and the attached SOW to

implement and be consistent with the Final Remedial Design and to perform the

Remedial Action. As specified in the attached SOW, the OU-1 RA Work Plan

shall include methodologies, plans and schedules for implementation of the

Remedial Design and performance of the Remedial Action and shall include, but

is not limited to, the following: (1) selection of the Remedial Action contractor;

(2) a Construction Quality Assurance Plan (CQAP); (3) a Construction Health

and Safety Plan; (4) a Sampling and Analysis Plan and Quality Assurance Project

Plan (QAPP); (5) an Operation, Monitoring and Maintenance Manual; (6) a

Construction Stormwater Pollution Prevention and Erosion Control Plan; (7) a

Field Sampling Plan (directed at measuring progress towards meeting

performance standards and implemented in accordance with the RD QAPP); and

-22-

(8) development and submission of the Performance Standards Assessment Plan. The OU-1 RA Work Plan shall also include a schedule for implementing all Remedial Action tasks identified in the SOW and shall identify the initial formulation of Respondent's Remedial Action Project Team (including the Supervising Contractor).

b. As an attachment to the OU-1 RA Work Plan, Respondent shall submit to the Forest Service for review, a Health and Safety Plan for field activities required by the OU-1 RA Work Plan. The Health and Safety Plan for field activities shall conform to applicable Occupational Safety and Health Administration and EPA requirements, including but not limited to the regulations at 29 C.F.R. Part 1910.

c. Upon approval by the Forest Service, the OU-1 RA Work Plan is incorporated into this Partial Consent Decree and shall be an enforceable part of this Partial Consent Decree.

d. Upon approval of the OU-1 RA Work Plan by the Forest Service, Settling Defendant shall implement the OU-1 RA Work Plan according to the schedules in the OU-1 RA Work Plan. Unless otherwise directed by the Forest Service, Settling Defendant shall not commence the Remedial Action at the Site prior to approval of the OU-1 RA Work Plan.

-23-

e.      Within 20 days after the Forest Service approves the OU-1 RA Work Plan Settling Defendant shall notify the Forest Service in writing of the name, title, and qualifications of any construction contractor(s) proposed to be used in carrying out work under this Partial Consent Decree. With respect to any proposed construction contractor, Settling Defendant shall demonstrate that the proposed construction contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed Project Manager's QMP. The QMP should be prepared in accordance with the specifications set forth in "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by the Forest Service. If the Forest Service disapproves of the selection of the construction contractor(s), Settling Defendant shall submit to the Forest Service within 10 days after receipt of the Forest Service's disapproval of the construction contractor(s) previously selected, a list of construction contractors that would be acceptable to Settling Defendant. The Forest Service will thereafter provide written notice to Settling Defendant of the names of the construction contractors that are acceptable to the Forest Service. Settling Defendant may then select any approved construction contractor from that list and

-24-

shall notify the Forest Service of the name of the construction contractor(s) selected within 7 days of the Forest Service's designation of approved construction contractors. The Forest Service retains the right to disapprove of Settling Defendant's designated construction contractors(s) at any time during the Settling Defendant's performance of Work. If the Forest Service disapproves of the designated construction contractor(s), Settling Defendant shall retain a different construction contractor(s) and shall notify the Forest Service of that person's name, address, telephone number and qualifications within five (5) days following the Forest Service's disapproval. If at any time Settling Defendant proposes to change the construction contractor(s), Settling Defendant shall notify the Forest Service and shall obtain approval from the Forest Service as provided in this Paragraph, before the new construction contractor(s) performs any work under this Partial Consent Decree.

       f.     Upon approval of the OU-1 RA Work Plan by the Forest Service, Settling Defendant shall implement the activities required under the OU-1 RA Work Plan. Settling Defendant shall submit to the Forest Service all reports and other deliverables required under the approved OU-1 RA Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (Forest Service Approval of Plans and Other Submissions). Unless otherwise directed by the Forest Service, Settling Defendant shall not commence

physical Remedial Action activities at the Site prior to approval of the OU-1 RA Work Plan.

11.     Settling Defendant shall continue to implement the OU-1 Remedial Action until the Performance Standards are achieved. Settling Defendant shall implement Post Achievement O&M for so long thereafter as is required by the OU-1 ROD, Remedial Design, and this Partial Consent Decree.

12.     Modification of SOW or Related Work Plans.

        a.      If the Forest Service determines that it is necessary to modify the work specified in the SOW and/or in work plans developed pursuant to the SOW to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the OU-1 ROD, and such modification is consistent with the scope of the remedy set forth in the OU-1 ROD and the Remedial Design, then the Forest Service may issue such modification in writing and shall notify Settling Defendant of such modification. For the purposes of this Paragraph and Paragraph 49 (Completion of Remedial Action for OU-1) only, the "scope of the remedy set forth in the OU-1 ROD" includes but is not limited to:

        1.      Installation of a multilayer cap and cover system to isolate landfill refuse from contact with potential receptors, reduce or eliminate

-26-

1  erosion and surface water infiltration through the waste mass, and reduce or

2
3  eliminate potential surface contaminant migration. The cover system includes

4  surface controls for drainage and storm water management.

5
6          2.     The relocation of waste from above and east of the

7  District's Site Portion of Trout Creek Trunk Pipeline and consolidating the waste

8
9  into the main landfill mass. This will result in the sewer line being located

10 outside the boundary of the waste disposal area and the footprint of the cover

11 system.

12
13         3.     Implementation of Institutional Controls to safeguard

14 the integrity of the multi-layer cap and cover system and associated monitoring
15
16 systems. Institutional Controls would prohibit construction of any habitable

17 structures, or other land-disturbing activity into or onto the surface of the landfill;
18
19 planting of vegetation that could threaten the integrity of the landfill cap; removal

20 of or tampering with posted signs; irrigation of the surface of the landfill; and

21
22 extraction of groundwater from beneath the landfill for public or private use.

23         4.     Implementation of a passive landfill gas (LFG) venting
24
25 system, as a component of the multilayer cap and cover system, to control LFG

26 migration.

27
28         5.     Expansion of the French drain along the western

-27-

1  boundary of the Site to prevent uncontaminated perched groundwater present at

2
3  the southwest and west sides of the landfill from contributing to the contaminated

4  groundwater plume beneath the landfill, and potentially affecting groundwater

5  levels within the waste.

6

7      6.      Pre and Post Achievement O&M including, but not

8
9  limited to, surface water monitoring and perimeter LFG migration monitoring.

10  If Settling Defendant objects to the modification they may, within 30 days after

11
12  the Forest Service's notification, seek dispute resolution under Paragraph 75

13  (Record Review).

14

15      b.      The SOW and/or related work plans shall be modified: (i) in

16  accordance with the modification issued by the Forest Service; or (ii) if Settling

17
18  Defendant invokes dispute resolution, in accordance with the final resolution of

19  the dispute. The modification shall be incorporated into and enforceable under

20  this Partial Consent Decree, and Settling Defendant shall implement all work

21
22  required by such modification. Settling Defendant shall incorporate the

23  modification into the OU-1 RA Work Plan under Paragraph 10.

24

25      c.      Nothing in this Paragraph shall be construed to limit the Forest

26  Service's authority to require performance of further response actions as

27
28  otherwise provided in this Partial Consent Decree.

-28-

13.     Nothing in this Partial Consent Decree, the SOW, or the OU-1 Remedial Design or OU-1 RA Work Plan constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards set forth in the OU-1 ROD and the SOW.  Settling Defendant's compliance with such approved documents does not foreclose the Forest Service from seeking additional work to achieve applicable performance standards.

14.     Off-Site Shipment of Waste Material.

a.     Settling Defendant may ship Waste Material from the Site to an off-Site facility only if they verify, prior to any shipment, that the off-Site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C. §9621(d)(3) and 40 C.F.R. § 300.440.

b.     Settling Defendant may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, they provide written notice to the appropriate state environmental official in the receiving facility's state and to the Forest Service Project Coordinator.  This notice requirement shall not apply to any off-Site shipments when the total

-29-

quantity of all such shipments will not exceed ten cubic yards. The written notice

shall include the following information, if available: (i) the name and location of

the receiving facility; (ii) the type and quantity of Waste Material to be shipped;

(iii) the schedule for the shipment; and (iv) the method of transportation. Settling

Defendant also shall notify the state environmental official referenced above and

the Forest Service Project Coordinator of any major changes in the shipment plan,

such as a decision to ship the Waste Material to a different out-of-state facility.

Settling Defendant shall provide the written notice after the award of the contract

for Remedial Action construction and before the Waste Material is shipped.

Before shipping any hazardous substances, pollutants, or contaminants from the

Site to an off-Site location, Settling Defendant shall provide the Forest Service

with certification that the proposed receiving facility is operating in compliance

with the requirements of CERCLA Section 121(d)(3), 42 U.S.C. 9621(d)(3), and

40 C.F.R. § 300.440. Settling Defendant shall only send hazardous substances,

pollutants, or contaminants from the Site to an off-Site facility that complies with

the requirements of the statutory provision and regulation cited in the preceding

sentence.

## VII. REMEDY REVIEW

15.   Periodic Review. Settling Defendant shall conduct any studies and

investigations that the Forest Service requests, in order to permit the Forest

Service to conduct reviews of whether the OU-1 Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c) and any applicable regulations.

16. Forest Service Selection of Further Response Actions. If the Forest Service determines, at any time, that the Remedial Action is not protective of human health and the environment, the Forest Service may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP. Settling Defendant is aware and acknowledges that further response actions will be necessary with respect to the Groundwater ROD or final response action at the SiteOU-2. The Groundwater ROD or future actions at the Site are not covered by this Partial Consent Decree.

17. Opportunity to Comment. Settling Defendant and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. § 9613(k)(2) or 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by the Forest Service as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

18. Settling Defendant's Obligation To Perform Further Response Actions. If the Forest Service selects further response actions for OU-1 at the

-31-

Site, the Forest Service may require Settling Defendant to perform such further response actions, but only to the extent that the reopener conditions in Paragraph 91 or Paragraph 92 (United States' Pre- and Post-Certification Reservations) are satisfied. Settling Defendant may invoke the procedures set forth in Section XX (Dispute Resolution) to dispute (a) the Forest Service's determination that the reopener conditions of Paragraph 91 or Paragraph 92 of Section XXII (Covenants by Plaintiff) are satisfied, (b) the Forest Service's determination that the OU-1 Remedial Action is not protective of human health and the environment, or (c) the Forest Service's selection of further OU-1 response actions. Disputes pertaining to whether the OU-1 Remedial Action is protective or to the Forest Service's selection of further OU-1 response actions shall be resolved pursuant to Paragraph 75 (Record Review).

19. Submission of Plans. If Settling Defendant is required to perform further OU-1 response actions pursuant to Paragraph 18, they shall submit a plan for such response action to the Forest Service for approval in accordance with the procedures of Section VI (Performance of the Work by Settling Defendant). Settling Defendant shall implement the approved plan in accordance with this Partial Consent Decree.

# VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

20.   Quality Assurance

a.   Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001, reissued May 2006) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002), and subsequent amendments to such guidelines upon notification by the Forest Service to Settling Defendant of such amendment, while conducting all sample collection and analysis activities, required herein under any plan. Amended guidelines shall apply only to procedures conducted after such notification.

b.   Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendant shall submit to the Forest Service for approval a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP, and applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by the Forest Service shall be admissible as evidence, without objection, in any proceeding under this Partial Consent Decree. Settling Defendant shall ensure that the Forest Service

-33-

personnel and its authorized representatives are allowed access at reasonable

times to all laboratories utilized by Settling Defendant in implementing this

Partial Consent Decree. In addition, Settling Defendant shall ensure that such

laboratories shall analyze all samples submitted by the Forest Service pursuant to

the QAPP for quality assurance monitoring. Settling Defendant shall ensure that

the laboratories they utilize for the analysis of samples taken pursuant to this

Partial Consent Decree perform all analyses according to accepted EPA methods.

Accepted EPA methods consist of those methods that are documented in the

"USEPA Contract Laboratory Program Statement of Work for Inorganic

Analysis. ILM05.4," and the "USEPA Contract Laboratory Program Statement of

Work for Organic Analysis, SOM01.2," and any amendments made thereto

during the course of the implementation of this Partial Consent Decree. Settling

Defendant shall ensure that all laboratories they use for analysis of samples taken

pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC

program. Settling Defendant shall only use laboratories that have a documented

Quality System which complies with ANSI/ASQC E4-1994, "Specifications and

Guidelines for Quality Systems for Environmental Data Collection and

Environmental Technology Programs" (American National Standard, January 5,

1995), and "EPA Requirements for Quality Management Plans (QA/R-2),"

(EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent

-34-

documentation as determined by EPA. The Forest Service may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Partial Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by the Forest Service.

21.     Upon request, Settling Defendant shall allow split or duplicate samples to be taken by the Forest Service or its authorized representatives, Settling Defendant shall notify the Forest Service not less than 14 days in advance of any sample collection activity unless shorter notice is agreed to by the Forest Service. In addition, the Forest Service shall have the right to take any additional samples that the Forest Service deems necessary. Upon request, the Forest Service shall allow the Settling Defendant to take split or duplicate samples of any samples it takes as part of the Plaintiff's oversight of Settling Defendant's implementation of the Work.

22.     Settling Defendant shall submit to the Forest Service a copy of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendant with respect to the Site and/or the implementation of this Partial Consent Decree unless the Forest Service agrees otherwise.

-35-

23. Notwithstanding any provision of this Partial Consent Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX. ACCESS

24. If the Site, or any other real property where access or land/water use restrictions are needed, is owned or controlled by persons other than Settling Defendant or the United States, Settling Defendant shall use best efforts to secure access agreements from the present owner(s) within thirty (30) days after the Effective Date of this Partial Consent Decree, or as otherwise specified in writing by the Project Coordinator. Such agreements shall provide access for the Forest Service, its contractors, subcontractors, and oversight officials, and Settling Defendant or its authorized representatives, contractors, and subcontractors, and such agreements shall specify that Settling Defendant is not the Forest Service's representative with respect to liability associated with Site activities.

25. For purposes of Paragraph 24, "best efforts" includes the payment of reasonable sums of money to obtain access. Settling Defendant shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendant has taken to attempt to comply with

-36-

1   Paragraph 24 of this Consent Decree. The United States may, as it deems

2   appropriate, assist Settling Defendant in obtaining access or agreements to restrict
3

4   land/water use, either in the form of contractual agreements or in the form of

5   easements running with the land, or in obtaining the release or subordination of a
6

7   prior lien or encumbrance. Settling Defendant shall reimburse the United States

8   under Section XVI (Payments for Response Costs), for all costs incurred, direct
9

10  or indirect, by the United States in obtaining such access, agreements to restrict

11  land/water use restrictions, including, but not limited to, the cost of attorney time

12  and the amount of monetary consideration paid or just compensation.
13

14      26.    If the Forest Service determines that Institutional Controls in the

15  form of state or local laws, regulations, ordinances, zoning restrictions, or other
16

17  governmental controls are needed Settling Defendant shall cooperate with the

18  Forest Service's efforts to secure and ensure compliance with such governmental
19

20  controls.

21
        27.    To the extent Settling Defendant reasonably anticipates excavating
22

23  material or otherwise implementing a portion of the Work above or immediately

24  around the District's Site Portion of the Trout Creek Trunk Pipeline, Settling
25

26  Defendant shall use its best efforts to provide reasonable advance notice of no

27  less than 48 hours to the District of such activities. Settling Defendant shall also

28  use best efforts to ensure that any access into the Site Portion of the Trout Creek

-37-

Trunk Pipeline meets all of the District's reasonable written requirements or reasonable verbal directions during on-site activity and that access to the Site Portion of the Trout Creek Trunk Pipeline will not interfere with the integrity of the pipeline.

28.     Notwithstanding any provision of this Partial Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

29.     In addition to any other requirement of this Partial Consent Decree and the attached SOW, Settling Defendant shall submit to the Forest Service Project Coordinator and Alternate Forest Service Project Coordinator a copy of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Partial Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendant or its contractors or agents in the previous month; (c) identify all plans, reports and other deliverables required by this Partial Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data

-38-

collection and implementation of work plans, and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendant has proposed to the Forest Service or that have been approved by the Forest Service; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks. Settling Defendant shall submit these progress reports to the Forest Service Project Coordinator and Alternate Project Coordinator by the tenth day of every month following the lodging of this Partial Consent Decree until the Forest Service notifies Settling Defendant pursuant to Paragraph 49.b. of Section XIV (Certification of Completion). If requested by the Forest Service, Settling Defendant shall also provide briefings for the Forest Service to discuss the progress of the Work.

30.     Settling Defendant shall notify the Forest Service of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work

1  plans, no later than seven days prior to the performance of the activity.

2

3  31.  Upon the occurrence of any event during performance of the Work

4  that Performing Settling Defendant is required to report pursuant to Section 103

5
6  of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and

7  Community Right-to-know Act ("EPCRA"), 42 U.S.C.§ 11004, Settling

8
9  Defendant shall within 24 hours of the onset of such event orally notify the Forest

10  Service Project Coordinator or the Alternate Forest Service Project Coordinator

11  (in the event of the unavailability of the Forest Service Project Coordinator), or,
12
13  in the event that neither the Forest Service Project Coordinator or Alternate Forest

14  Service Project Coordinator is available, the Forest Service Regional Office

15
16  CERCLA Coordinator at (707) 562-8729. These reporting requirements are in

17  addition to the reporting required by CERCLA Section 103 or EPCRA Section

18  304.
19

20  32.  Within 20 days of the onset of such an event, Settling Defendant
21
22  shall furnish to the Forest Service a written report, signed by Settling Defendant's

23  Project Manager, setting forth the events that occurred and the measures taken,

24  and to be taken, in response thereto.  Within 30 days of the conclusion of such an
25
26  event, Settling Defendant shall submit a report setting forth all actions taken in

27  response thereto.

28

-40-

33.    Settling Defendant shall submit 3 copies of all plans, reports, data, and other deliverables required by the SOW, the OU-1 RA Work Plan, or any other approved plans to the Forest Service in accordance with the schedules set forth in such plans. Upon request by the Forest Service, Settling Defendant shall submit in electronic form all or any portion of any deliverables Settling Defendant is required to submit pursuant to the provisions of this Partial Consent Decree.

34.    All deliverables submitted by Settling Defendant to the Forest Service which purport to document Settling Defendant's compliance with the terms of this Partial Consent Decree shall be signed by an authorized representative of Settling Defendant.

## XI. FOREST SERVICE APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

35.    Initial Submissions.

a.    After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Partial Consent Decree, the Forest Service, shall: (i) approve, in whole or in part, the submission; (ii) approve the submission upon specified conditions; (iii) disapprove, in whole or in part, the submission; or (iv) any combination of the foregoing.

-41-

b.     The Forest Service also may modify the initial submission to cure deficiencies in the submission if: (i) the Forest Service determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (ii) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

36.     Resubmissions.  Upon receipt of a notice of disapproval under Paragraph 35.a.(iii) or (iv), or if required by a notice of approval upon specified conditions under paragraph 35.a.(ii), Settling Defendant shall within 10 days or such longer time as specified by the Forest Service in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, the Forest Service may: (a) Approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Settling Defendant to correct the deficiencies; or (e) any, combination of the foregoing.

37.     Material Defects.  If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by the Forest Service under

-42-

1   Paragraph 35.b(ii) or 36 due to such material defect, then the material defect shall

2
3   constitute a lack of compliance for purposes of Paragraph 78.  The provisions of

4   Section XX (Dispute Resolution) and Section XXI (Stipulated Penalties) shall

5   govern the accrual and payment of any stipulated penalties regarding Settling
6
7   Defendant's submissions under this Section.

8       38.    Implementation.  Upon approval, approval upon conditions, or
9
10  modification by the Forest Service under Paragraph 35 or 36, of any plan, report,

11  or other deliverable, or any portion thereof: (a) such plan, report, or other
12
13  deliverable, or portion thereof, shall be incorporated into and enforceable under

14  this Partial Consent Decree; and (b) Settling Defendant shall take any action

15  required by such plan, report, or other deliverable or portion thereof, subject only
16
17  to their right to invoke the Dispute Resolution procedures set forth in Section XX

18  (Dispute Resolution) with respect to the modifications or conditions made by the
19
20  Forest Service. The implementation of any non-deficient portion of a plan, report,

21  or other deliverable submitted or resubmitted under Paragraph 35 or 36 shall not
22
23  relieve Settling Defendant of any liability for stipulated penalties under Section

24  XXI (Stipulated Penalties).

25

26  **XII. COUNTY PROJECT MANAGER/FOREST SERVICE PROJECT COORDINATOR**

27
        39.    Within 10 days of signing this Partial Consent Decree, Settling
28

-43-

Defendant will notify the Forest Service, in writing, of the name, address, and telephone number of their respective designated Project Manager and Alternate Project Manager, each of whom shall be a County employee. If a Project Manager or Alternate Project Manager initially designated is changed, the identity of the successor will be given to the Forest Service at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made. Settling Defendant's Project Manager shall be subject to disapproval by the Forest Service and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. Neither Settling Defendant's Project Manager nor Alternate Project Manager shall be an attorney for Settling Defendant in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

40. All communications, whether written or oral, from Settling Defendant to the Forest Service shall be directed to the Forest Service's Project Coordinator. Settling Defendant shall submit to the Forest Service three copies of all documents, including plans, reports, and other correspondence, which are developed pursuant to this Partial Consent Decree, and shall send these documents by certified mail, return receipt requested or overnight mail.

The Forest Service's Project Coordinator is:

      Gail Bakker
      Forest Service, Tahoe National Forest
      631 Coyote Street
      Nevada City, CA 95959
         phone: 530-478-6192
         fax: 530-478-6109
         e-mail: gbakker@fs.fed.us

Two copies of all documents shall be sent to the Project Coordinator, and one copy shall be sent to the Alternate Project Coordinator:

      Dennis Geiser
      Forest Service
      Pacific Southwest Region
      1323 Club Drive
      Vallejo, CA 94592
         phone: 707-562-8729
         fax: 707-562-9055
         e-mail: dennisgeiser@fs.fed.us

The Forest Service has the unreviewable right to change its Project Coordinator. If the Forest Service changes its Project Coordinator, the Forest Service will inform Settling Defendant in writing of the name, address, and telephone number of the new Project Coordinator.

    41.    The Forest Service may designate other representatives, including, but not limited to, Forest Service employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken

-45-

1  pursuant to this Partial Consent Decree. The Forest Service's Project Coordinator

2  and Alternate Project Coordinator shall have the authority lawfully vested in a

3

4  Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the

5  NCP, 40 C.F.R. Part 300. In addition, the Forest Service's Project Coordinator

6

7  and/or Alternate Project Coordinator shall have authority, consistent with the

8  NCP, to halt any Work required by this Partial Consent Decree and to take any

9

10  necessary response action when he or she determines that conditions at the Site

11  constitute an emergency situation or may present an immediate threat to public

12  health or welfare or the environment due to release or threatened release of Waste

13

14  Material.

15

16  42.    The Forest Service's Project Coordinator and Settling Defendant's

17  Project Manager will meet, at a minimum, on a monthly basis while on-site

18  construction of the OU-1 remedy is ongoing.

19

20  ## XIII. PERFORMANCE GUARANTEE

21

22  43.    In order to ensure the full and final completion of the Work, Settling

23  Defendant shall provide a performance guarantee for the benefit of the Forest

24

25  Service in the amount of $ 7.2 million (hereinafter "Estimated Unfunded Cost of

26  the Work"). The performance guarantee, which must be satisfactory in form and

27  substance to the Forest Service, shall be in the form of one or more of the

28

-46-

1   following mechanisms (provided that, if Settling Defendant intends to use

2   multiple mechanisms, such multiple mechanisms shall be limited to surety bonds

3   guaranteeing payment, letters of credit, trust funds, and insurance policies):

4

5       a.   A surety bond unconditionally guaranteeing payment and/or

6   performance of the Work that is issued by a surety company among those listed

7   as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S.

8   Department of the Treasury;

9

10      b.   One or more irrevocable letters of credit, payable to or at the

11  direction of the Forest Service, that is issued by one or more financial

12  institution(s) (i) that has the authority to issue letters of credit and (ii) whose

13  letter-of-credit operations are regulated and examined by a federal or state

14  agency;

15

16      c.   A trust fund established for the benefit of the Forest Service that

17  is administered by a trustee (i) that has the authority to act as a trustee and (ii)

18  whose trust operations are regulated and examined by a federal or state agency;

19

20      d.   A policy of insurance that (i) provides the Forest Service with

21  acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier

22  (a) that has the authority to issue insurance policies in the applicable

23  jurisdiction(s) and (b) whose insurance operations are regulated and examined by

a federal or state agency; or

e. A demonstration by Settling Defendant that it is a local government or other political subdivision of the State, and that such Settling Defendant satisfies the requirements in Appendix E;

f. A demonstration by Settling Defendant that it meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are met to the Forest Service's satisfaction.

44. Settling Defendant has selected, and the Forest Service has approved, as an initial performance guarantee a demonstration by the Settling Defendant pursuant to the requirements of Paragraph 43(e) and Appendix E to address their obligation hereunder. Within ten days after the Effective Date of this Partial Consent Decree, Settling Defendant shall execute or cause to be executed or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) and the assignment thereof legally binding in a form substantially identical to the documents attached hereto as Appendix E, and such performance guarantee(s) shall thereupon be fully

-48-

effective. Within 30 days of the Effective Date of this Partial Consent Decree, Settling Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the Forest Service Regional Financial Management Officer in accordance with Section XXVII ("Notices and Submissions") of this Partial Consent Decree and to the United States and the Forest Service as specified in Section XXVII (Notices and Submissions).

45.    If, at any time after the Effective Date and before issuance of the Certification of Completion of the Remedial Action pursuant to Paragraph 49, Settling Defendant provides a performance guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 43(e) above, Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), relating to these mechanisms unless otherwise provided in this Partial Consent Decree, including but not limited to (a) the initial submission of required financial reports and statements from the relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in the form prescribed by EPA in its financial test sample CFO letter and CPA

reports available at:

http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-test-samples.pdf;

(b) the annual re-submission of such reports and statements within ninety days after the close of each such entity's fiscal year; and (c) the prompt notification of the Forest Service after each such entity determines that it no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1) and in any event within ninety days after the close of any fiscal year in which such entity no longer satisfies such financial test requirements. For purposes of the performance guarantee mechanisms specified in this Section XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to include the Work; the terms "current closure cost estimate" "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work; the term "operator" shall be deemed to refer to Settling Defendant making a demonstration under Paragraph 43.e; and the terms "facility" and "hazardous waste facility" shall be deemed to include the Site.

46.    In the event that the Forest Service determines at any time that a performance guarantee provided by Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this

Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that Settling Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendant, within thirty days of receipt of notice of the Forest Service's determination or, as the case may be, within thirty days of Settling Defendant becoming aware of such information, shall obtain and present to the Forest Service for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 43 of this Partial Consent Decree that satisfies all requirements set forth in this Section XIII; provided, however, that if Settling Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that Settling Defendant shall commence to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, the Forest Service shall extend such period for such time as is reasonably necessary for Settling Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 60 days. On day 30, Settling Defendant shall provide to the Forest Service a status report on its efforts to obtain the revised or

-51-

1    alternative form of guarantee.  In seeking approval for a revised or alternative

2    form of performance guarantee, Settling Defendant shall follow the procedures

3    set forth in Paragraph 48.b.(2) of this Partial Consent Decree.  Settling

4
5    Defendant's inability to post a performance guarantee for completion of the Work

6    shall in no way excuse performance of any other requirements of this Partial

7
8    Consent Decree, including, without limitation, the obligation of Settling

9    Defendant to complete the Work in strict accordance with the terms of this Partial

10
11   Consent Decree.

12
13        47.   Funding for Work Takeover.  The commencement of any Work

14   Takeover pursuant to Paragraph 95 of this Partial Consent Decree shall trigger the

15
16   Forest Service's right to receive the benefit of any performance guarantee(s)

17   provided pursuant to Paragraph 43(a), 43(b), 43(c), or 43(d) and at such time the

18
19   Forest Service shall have immediate access to resources guaranteed under any

20   such performance guarantee(s), whether in cash or in kind, as needed to continue

21   and complete the Work assumed by the Forest Service under the Work Takeover.

22
23   Upon the commencement of any Work Takeover, if (a) for any reason the Forest

24   Service is unable to promptly secure the resources guaranteed under any such

25
26   performance guarantee(s), whether in cash or in kind, necessary to continue and

27   complete the Work assumed by the Forest Service under the Work Takeover, or

28   (b) in the event that the performance guarantee involves a demonstration of

satisfaction of the financial test criteria pursuant to Paragraph 44(e), Settling

Defendant shall immediately upon written demand from the Forest Service

deposit into a Forest Service special account or such other account as the Forest

Service may specify, in immediately available funds and without setoff,

counterclaim, or condition of any kind, a cash amount up to but not exceeding the

estimated cost of completing the Work as of such date, as determined by the

Forest Service. In addition, if at any time the Forest Service is notified by the

issuer of a performance guarantee that such issuer intends to cancel the

performance guarantee mechanism it has issued, then, unless Settling Defendant

provides a substitute performance guarantee mechanism in accordance with this

Section XIII no later than 30 days prior to the impending cancellation date, the

Forest Service shall be entitled (as of and after the date that is 30 days prior to the

impending cancellation) to draw fully on the funds guaranteed under the then-

existing performance guarantee. All Forest Service Work Takeover costs not

reimbursed under this paragraph shall be reimbursed under section XVI

(Payments for Response Costs).

48.   Modification of Amount and/or Form of Performance Guarantee.

a.   Reduction of Amount of Performance Guarantee. If Settling

Defendant believes that the estimated cost of completing the Work has

diminished below the amount set forth in Paragraph 43, Settling Defendant may,

on any anniversary date of entry of this Partial Consent Decree, or at any other

time agreed to by the Parties, petition the Forest Service in writing to request a

reduction in the amount of the performance guarantee provided pursuant to this

Section so that the amount of the performance guarantee is equal to the estimated

cost of completing the Work.  Settling Defendant shall submit a written proposal

for such reduction to the Forest Service that shall specify, at a minimum, the

estimated cost of completing the Work and the basis upon which such cost was

calculated.  In seeking approval for a reduction in the amount of the performance

guarantee, Settling Defendant shall follow the procedures set forth in Paragraph

48.b.(2) for requesting a revised or alternative form of performance guarantee,

except as specifically provided in this Paragraph 48.a.  If the Forest Service

decides to accept Settling Defendant's proposal for a reduction in the amount of

the performance guarantee, either to the amount set forth in Settling Defendant's

written proposal or to some other amount as selected by the Forest Service, the

Forest Service will notify Settling Defendant of such decision in writing.  Upon

the Forest Service's acceptance of a reduction in the amount of the performance

guarantee, the Estimated Cost of the Work shall be deemed to be the estimated

cost of completing the Work set forth in the Forest Service's written decision.

After receiving the Forest Service's written decision, Settling Defendant may

reduce the amount of the performance guarantee in accordance with and to the

-54-

extent permitted by such written acceptance and shall submit copies of all

executed and/or otherwise finalized instruments or other documents required in

order to make the selected performance guarantee(s) legally binding in

accordance with Paragraph 48.b.(2). In the event of a dispute, Settling Defendant

may reduce the amount of the performance guarantee required hereunder only in

accordance with a final administrative or judicial decision resolving such dispute

pursuant to Section XIX (Dispute Resolution). No change to the form or terms of

any performance guarantee provided under this Section, other than a reduction in

amount, is authorized except as provided in Paragraphs 46 or 48.b.

         b. Change of Form of Performance Guarantee.

         (1) If, after the Effective Date, Settling Defendant desires to

change the form or terms of any performance guarantee(s) provided pursuant to

this Section, Settling Defendant may, on any anniversary date of entry of this

Partial Consent Decree, or at any other time agreed to by the Parties, petition the

Forest Service in writing to request a change in the form or terms of the

performance guarantee provided hereunder. The submission of such proposed

revised or alternative performance guarantee shall be as provided in Paragraph

48.b.(2). Any decision made by the Forest Service on a petition submitted under

this Paragraph shall be made in the Forest Service's sole and unreviewable

discretion, and such decision shall not be subject to challenge by Settling

-55-

1    Defendant pursuant to the dispute resolution provisions of this Partial Consent

2    Decree or in any other forum.

3

4          (2)   Settling Defendant shall submit a written proposal for a

5    revised or alternative performance guarantee to the Forest Service which shall
6
7    specify, at a minimum, the estimated cost of completing the Work, the basis upon

8    which such cost was calculated, and the proposed revised performance guarantee,
9
10   including all proposed instruments or other documents required in order to make

11   the proposed performance guarantee legally binding.  The proposed revised or
12
13   alternative performance guarantee must satisfy all requirements set forth or

14   incorporated by reference in this Section.  Settling Defendant shall submit such
15
16   proposed revised or alternative form of performance guarantee to the Forest

17   Service Regional Financial Management Officer in accordance with Section

18   XXVII (Notices and Submissions) of this Partial Consent Decree.  The Forest
19
20   Service will notify Settling Defendant in writing of its decision to accept or reject

21   a revised or alternative performance guarantee submitted pursuant to this
22
23   Paragraph.  Within ten days after receiving a written decision approving the

24   proposed revised or alternative performance guarantee, Settling Defendant shall

25   execute and/or otherwise finalize all instruments or other documents required in
26
27   order to make the selected performance guarantee legally binding in a form

28   substantially identical to the documents submitted to the Forest Service as part of

-56-

the proposal, and such performance guarantee shall thereupon be fully effective. Settling Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the Forest Service Regional Financial Management Officer within thirty days of receiving a written decision approving the proposed revised or alternative performance guarantee in accordance with Section XXVII (Notices and Submissions) of this Partial Consent Decree and to the United States and the Forest Service as specified in Section XXVII.

c. Release of Performance Guarantee. Settling Defendant shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph. If Settling Defendant receives written notice from the Forest Service in accordance with Paragraph 49 hereof that the Remedial Action has been fully and finally completed in accordance with the terms of this Partial Consent Decree, or if the Forest Service otherwise so notifies Settling Defendant in writing, Settling Defendant may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section. In the event of a dispute, Settling Defendant may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XX (Dispute Resolution).

-57-

## XIV. CERTIFICATION OF COMPLETION

49.    Completion of the Remedial Action.

a.    Pre-Certification Inspection: Within 30 days after Settling Defendant concludes that the Remedial Action has i) been fully performed, ii) achieved the remedial action goals and objectives set forth in the OU-1 ROD, iii) is operational and functional, and iv) is functioning properly and is performing as designed, Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling Defendant and the Forest Service as specified in the SOW. If deficiencies are found during the pre-certification inspection, a Pre-Final Inspection Report shall be prepared by the Settling Defendant which describes the deficiencies identified by the Forest Service in the pre-final inspection, actions undertaken to resolve the items, the completion date for the items, and certification that all outstanding items and deficiencies have been addressed and resolved. The Pre-Final Inspection Report shall be submitted to the Forest Service within fourteen (14) days of the completion of the pre-certification inspection in accordance with the provisions in the SOW and Section XI (Forest Service Approval of Plans and Other Submissions) within 14 days of the inspection. In the report, a registered professional engineer and Settling Defendant's Project Manager shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Partial Consent Decree.

-58-

The Pre-Final Inspection Report shall include as-built drawings signed and

stamped by a professional engineer. The report shall contain the following

statement, signed by a responsible corporate official of Settling Defendant or

Settling Defendant's Project Manager:

> I certify under penalty of law that this document and all attachments
> were prepared under my direction or supervision in accordance with
> a system designed to assure that qualified personnel properly gather
> and evaluate the information submitted. Based on my inquiry of the
> person or persons who manage the system, or those persons directly
> responsible for gathering the information, the information submitted
> is, to the best of my knowledge and belief, true, accurate, and
> complete. I am aware that there are significant penalties for
> submitting false information, including the possibility of fine and
> imprisonment for knowing violations.

If no deficiencies are found during the pre-certification inspection, the pre-

certification inspection shall be considered to be the final certification

inspection and the Settling Defendant shall prepare and submit Remedial

Action Completion Certification Report in accordance with the provisions

in the SOW and Section XI (Forest Service Approval of Plans and Other

Submissions) within 14 days of the inspection.

      b.    Final Certification Inspection: Within fourteen (14) days of

the submittal of the Pre-Final Inspection Report, the Settling Defendant shall

schedule a final certification inspection with the Forest Service. The Pre-Final

Inspection Report shall be used as a checklist with the final inspection focusing

on the outstanding items identified in the pre-final inspection. The Forest Service

shall confirm that all outstanding items have been resolved. If, after completion

of the final certification inspection and receipt and review of the Pre-Final

Inspection Report, the Forest Service determines that the Remedial Action or any

portion thereof has not been completed in accordance with this Partial Consent

Decree or that the Performance Standards have not been achieved, the Forest

Service will notify Settling Defendant in writing of the activities that must be

undertaken by Settling Defendant pursuant to this Partial Consent Decree to

complete the Remedial Action and achieve the Performance Standards, provided,

however, that the Forest Service may only require Settling Defendant to perform

such activities pursuant to this Paragraph to the extent that such activities are

consistent with the "scope of the remedy set forth in the OU-1 ROD," as that term

is defined in Paragraph 12.a. The Forest Service will set forth in the notice a

schedule for performance of such activities consistent with the Partial Consent

Decree and the SOW or require Settling Defendant to submit a schedule to the

Forest Service for approval pursuant to Section XI (Forest Service Approval of

Plans and Other Submissions). Settling Defendant shall perform all activities

described in the notice in accordance with the specifications and schedules

established pursuant to this Paragraph, subject to their right to invoke the dispute

resolution procedures set forth in Section XX (Dispute Resolution).

If no deficiencies are found during the final certification inspection, the Settling Defendant shall prepare and submit Remedial Action Completion Certification Report in accordance with the provisions in the SOW and Section XI (Forest Service Approval of Plans and Other Submissions).

      c.    Remedial Action Completion Certification Report: Within thirty (30) days after the final certification inspection, (or the pre-certification inspection if no deficiencies were found), the Settling Defendant shall submit a Remedial Action Completion Report to the Forest Service for review and approval in accordance with the provisions in the SOW. If the Forest Service concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action that the Remedial Action undertaken by the Settling Defendant has: i) been fully performed, ii) achieved the remedial action goals and objectives set forth in the OU-1 ROD, iii) is operational and functional, and iv) is functioning properly and is performing as designed, the Forest Service will so certify in writing to Settling Defendant. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Partial Consent Decree, including, but not limited to, Section XXII (Covenants by Plaintiff). Certification of Completion of the Remedial Action shall not affect Settling Defendant's remaining obligations for the Work under this Partial Consent Decree, including but not limited to, Post-Achievement

-61-

O&M.

## XV. EMERGENCY RESPONSE

50.    If any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendant shall, subject to Paragraph 51, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the Forest Service's Project Coordinator, or, if the Project Coordinator is unavailable, the Forest Service's Alternate Project Coordinator. If neither of these persons is available, Settling Defendant shall notify the Forest Service Regional Office CERCLA Coordinator at (707) 562-8729. Settling Defendant shall take such actions in consultation with the Forest Service's Project Coordinator or other available authorized Forest Service officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendant fails to take appropriate response action as required by this Section, and the Forest Service takes such action instead, Settling Defendant shall reimburse the Forest Service all costs of the response action under Section XVI (Payments for Response Costs).

-62-

51.     Subject to Section XXII (Covenants by Plaintiff), nothing in the

preceding Paragraph or in this Partial Consent Decree shall be deemed to limit

any authority of the United States a) to take all appropriate action to protect

human health and the environment or to prevent, abate, respond to, or minimize

an actual or threatened release of Waste Material on, at, or from the Site, or b) to

direct or order such action, or seek an order from the Court, to protect human

health and the environment or to prevent, abate, respond to, or minimize an actual

or threatened release of Waste Material on, at, or from the Site.

## XVI. PAYMENTS FOR RESPONSE COSTS

52.     Payment by Settling Defendant for Past Response Costs.

a.      Within 120 days of the Effective Date, Settling Defendant

shall pay to the Forest Service $1,651,000, plus Interest in payment for Past

Response Costs.  Payment shall be made by FedWire Electronic Funds Transfer

("EFT") to the U.S. Department of Justice account in accordance with current

EFT procedures, referencing USAO File Number 2001V00433 and DOJ Case

Number 90-11-3-06554 and Agency Locator Code AGFS.  Payment shall be

made in accordance with instructions provided to Settling Defendant by the

Financial Litigation Unit of the U.S. Attorney's Office in the Eastern District of

California following lodging of the Partial Consent Decree.  Any payment

-63-

1  received by the Department of Justice after 4:00 p.m. Eastern Time shall be

2
3  credited on the next business day. At the time of payment, Settling Defendant

4  shall send notice that payment has been made to the Forest Service and DOJ in

5  accordance with Section XXVII (Notices and Submissions).

6

7  Upon receipt of the Settling Defendant's payment of Past Response

8
9  Costs pursuant to this paragraph, the Forest Service shall deposit the amount

10  transferred by DOJ into the Meyers Landfill Special Account to be retained and

11  used by the Forest Service to conduct or finance response actions at or in

12
13  connection with the Site.

14  53.   Payments by Settling Defendant for Future Oversight Costs.

15

16  a.   Settling Defendant shall pay to the Forest Service all Future

17
18  Oversight Costs not inconsistent with the National Contingency Plan. On a

19  periodic basis the Forest Service will send Settling Defendant a bill requiring

20  payment that includes an accounting of all Oversight Costs incurred over a certain

21
22  period with respect to this Partial Consent Decree. The bill will include a

23  certified Agency Financial Management System summary (FFIS Reports), or

24
25  such other summary data as certified by the Forest Service (which includes direct

26  and indirect costs incurred by the Forest Service and its contractors). Settling

27
28  Defendant shall make all payments within 30 days of Settling Defendant's receipt

-64-

of each bill requiring payment, except as otherwise provided in Paragraph 54.

b.     Payment of Future Oversight Costs shall be made by Certified or Bank Check made payable to the "USDA Forest Service" and reference the Settling Defendant's name, address, tax-identification number, the Meyers Landfill Partial Consent Decree, and the Collection Number referenced on the bill. A copy of the bill shall accompany the payment and the payment shall be directed to the address provided on the bill. Alternatively, Settling Defendant may make this payment by EFT, in accordance with instructions provided by the Forest Service.

54.     Settling Defendant may contest any Future Oversight Costs billed under Paragraph 53 if it determines that the Forest Service has made a mathematical error or included a cost item that is not within the definition of Future Oversight Costs, or if it believes the Forest Service incurred excess costs as a direct result of a Forest Service action that was inconsistent with a specific provision or provisions of the NCP. Such objection shall be made in writing within 30 days of receipt of the bill and must be sent to the United States pursuant to Section XXVII (Notices and Submissions). Any such objection shall specifically identify the contested Future Oversight Costs and the basis for objection. In the event of an objection, Settling Defendant shall pay all uncontested Future Oversight Costs to the United States within 30 days of

-65-

1    Settling Defendant's receipt of the of the bill requiring payment. Simultaneously,

2    Settling Defendant shall establish an interest-bearing escrow account in a
3
4    federally-insured bank duly chartered in the State of California and remit to that

5    escrow account funds equivalent to the amount of the contested Future Oversight
6
7    Costs. Settling Defendant shall send to the United States, as provided in Section

8    XXVII (Notices and Submissions), a copy of the transmittal letter and check or a
9
10   copy of the EFT paperwork paying the uncontested Future Oversight Costs, and a

11   copy of the correspondence that establishes and funds the escrow account,

12   including, but not limited to, information containing the identity of the bank and
13
14   bank account under which the escrow account is established as well as a bank

15   statement showing the initial balance of the escrow account. Simultaneously with
16
17   establishment of the escrow account, Settling Defendant shall initiate the Dispute

18   Resolution procedures in Section XX (Dispute Resolution). If the United States
19
20   prevails in the dispute Settling Defendant shall pay the sums due (with accrued

21   interest) to the Forest Service within five days of the resolution of the dispute. If

22   Settling Defendant prevails concerning any aspect of the contested costs, Settling
23
24   Defendant shall pay that portion of the costs (plus associated accrued interest) for

25   which they did not prevail to the Forest Service within five days of the resolution

26   of the dispute. Settling Defendant shall be disbursed any balance of the escrow
27
28   account. The dispute resolution procedures set forth in this Paragraph in

conjunction with the procedures set forth in Section XX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendant's obligation to reimburse the Forest Service for its Future Oversight Costs.

55.    Interest.  In the event that any payment of Past Response Costs or Future Oversight Costs required under this Section is not made by the date required, Settling Defendant shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue 45 days from the Effective Date. The Interest on Future Oversight Costs shall begin to accrue on the 31st day of mailing of the bill. The Interest shall accrue through the date of Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to the United States by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 79.

56.    Payments by the United States.

a.    As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Forest Service, shall pay to Settling Defendant $1,612,349 in payment of Settling Defendant Past Response Costs and Settling

-67-

Defendant Future OU-1 Response Costs in accordance with instructions provided by Settling Defendant.

b.    In the event that payment required by Paragraph 56.a is not made within 45 days of the Effective Date, Interest on the unpaid balance shall be paid commencing on the 46th day after the Effective Date and accruing through the date of the payment.

c.    To the extent that Settling Defendant incurs and pays Settling Defendant Excess Future OU-1 Construction Costs, the United States, on behalf of the Forest Service, shall pay to Settling Defendant an amount equal to 20% of Settling Defendant Excess Future OU-1 Construction Costs in payment of Settling Defendant Excess Future OU-1 Construction Costs in accordance with instructions provided by Settling Defendant, provided that Settling Defendant complies with the procedure set forth in Paragraphs 56.d through 56.i.

d.    Within 90 days after Settling Defendant incurs and pays Settling Defendant Excess Future OU-1 Construction Costs, Settling Defendant shall submit to the United States a "Statement of Costs." A Statement of Costs shall include: (i) a comprehensive description of the expenses for which payment under Paragraph 56.c is sought, including sufficient documentation that identifies the work and the costs alleged to be Settling Defendant Excess Future OU-1

-68-

Construction Costs to allow the United States to verify the claim and the

consistency of the alleged Settling Defendant Excess Future OU-1 Construction

Costs with this Partial Consent Decree and CERCLA; (ii) proof that all the

purported Settling Defendant Excess Future OU-1 Construction Costs included in

the Statement of Costs have actually been incurred and paid and are exclusive of

any Waste Board Grant; (iii) a certification by the Chief Accounting Officer of

the County's Environmental Management Department or an independent

Certified Public Accountant that the Statement of Costs include only costs that

qualify as Settling Defendant Excess Future OU-1 Construction Costs that were

actually incurred and paid by Settling Defendant. Each certification shall contain

the following statement:

> To the best of my knowledge, after thorough investigation and review of Settling Defendant's documentation of costs incurred and paid for Settling Defendant Excess Future OU-1 Construction Costs, I certify that the information contained in or accompanying this submission is true, accurate, and complete. I am aware that there are significant penalties for knowingly submitting false information, including the possibility of fine and imprisonment.

The Chief Accounting Officer of the County's Environmental Management

Department or Independent Certified Public Accountant shall also provide the

Forest Service a list of the documents that he or she reviewed in support of the

Statement of Costs Certification. Upon request by the Forest Service, Settling

Defendant shall submit to the Forest Service any additional information that the Forest Service deems necessary for its review and approval of a Statement of Costs and Certification. Settling Defendant bears the burden of proof that an expense claimed is subject to payment by the United States in accordance with Paragraph 56.c. A new Statement of Costs may be submitted every 90 days to the extent Settling Defendant continues to incur and pay Settling Defendant Excess Future OU-1 Construction Costs.

e. Within 30 days of receiving a Statement of Costs (or a longer period of time if agreed to in writing by the Parties), the United States shall submit to Settling Defendant a written notice as to whether the United States disputes any portion of such Statement of Costs and, if so, a brief explanation of any such dispute.

f. Within 30 days of receiving a Statement of Costs (or a longer period of time if agreed to in writing by the Parties), the United States may submit to Settling Defendant a written request for additional information. Settling Defendant shall respond in writing within 30 days of receiving the request (or a longer period of time as agreed to in writing by the Parties). The submission of the United States' request for additional information tolls the time set forth in Paragraph 56.e. until 30 days after Settling Defendant responds to the request for additional information.

g. To the extent that the United States submits to Settling Defendant a written notice of a dispute to any portion of a Statement of Costs, Settling Defendant may initiate the dispute resolution process set forth in Paragraph 76 (Dispute Resolution) of this Partial Consent Decree.

h. To the extent that the United States does not dispute any portion of a Statement of Costs, the United States shall make payment as soon as reasonably practicable after its receipt of such Statement of Costs. In the event that payment is not made within 150 days of the United States' receipt of such Statement of Costs, Interest on the unpaid balance shall be paid at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), commencing on the 151st day after the United States' receipt of such Statement of Costs and accruing through the date of the payment.

i. After the Forest Service issues a Certification of the Completion of the Remedial Action as set forth in Paragraph 49.c., Settling Defendant may no longer submit any Statement of Costs to the United States pursuant to Paragraphs 56.c. or d. The United States' obligation under Paragraph 56.c. automatically terminates upon issuance of the Certification of Completion of the Remedial Action or final resolution of any timely-submitted Statement of Costs, whichever is later.

-71-

57.     The Parties to this Consent Decree recognize and acknowledge that the payment obligations of the United States under this Partial Consent Decree can only be paid from appropriated funds legally available for such purpose. Nothing in this Partial Consent Decree shall be interpreted or construed as a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

### XVII. Funding and Disbursement of Special Account Funds

58.     Creation of Meyers Landfill Site Disbursement Special Account, County Meyers Landfill Site Special Account and Agreement to Disburse Funds to Settling Defendant.

a.     Within 30 days after the Effective Date, the Forest Service shall establish a new special account, the Meyers Landfill Site Disbursement Special Account ("Disbursement Account"). The Forest Service shall transfer $1,622,000.00, as funds become available, from the Meyers Landfill Site Special Account to the Disbursement Account.

b.     Within 30 days of Settling Defendant's receipt of the U.S. Payment made pursuant to Paragraph 56.a., Settling Defendant shall transfer $1,612,349 and any Interest paid pursuant to Paragraph 56.b., by certified check

-72-

(made payable to the "USDA Forest Service" and reference the Settling

Defendant's name, address, tax-identification number, the Meyers Landfill Partial

Consent Decree, and the Collection Number referenced on the bill) or by EFT in

accordance with instructions provided by the Forest Service for deposit by the

Forest Service into the Meyers Landfill Site Special Account. Within 15 days

thereafter the Forest Service will transfer those funds into the Disbursement

Account. Interest and Stipulated Penalties shall accrue if this amount is not

transferred by Settling Defendant within 30 days of receipt.

        c.      On the date this Partial Consent Decree is executed by the

County, the County shall establish the County Meyers Landfill Special Account

(the "County Account") solely for the receipt and disbursement of funds used in

connection with the Work.

Subject to the terms and conditions set forth in this Section, the Forest Service

agrees to make the funds in the Disbursement Account available for disbursement

to Settling Defendant as partial reimbursement for performance of the Work

under this Partial Consent Decree. The Forest Service shall disburse funds from

the Disbursement Account to Settling Defendant in accordance with the

procedures for disbursement set forth in this Section.

59. Pre-Conditions to Disbursing of Funds from the Disbursement Account.

a.     Settling Defendant must exhaust the funds in the Court Registry Account in performance of Work pursuant to this Partial Consent Decree, excluding costs not eligible for disbursement under Paragraph 61, before it receives disbursements from the Disbursement Account pursuant to this paragraph.

b.     Within 30 days after Settling Defendant has exhausted all the funds in the Court Registry Account, Settling Defendant shall provide to the Forest Service a Statement of Costs and Certification for all costs incurred and paid with funds from the Court Registry Account at the Site following the procedures set forth in Paragraphs 60.b and this Paragraph.

c.     Within 30 days of receiving a Statement of Costs and Certification for all costs incurred and paid with funds from the Court Registry Account (or a longer period of time if agreed to in writing by the parties), the Forest Service shall submit to Settling Defendant a written notice as to whether the Forest Service accepts or objects to any portion of such Statement of Costs. If there is an objection, the Forest Service shall provide a brief explanation of any such objection in its written notice.

-74-

d.    Within 30 days of receiving a Statement of Costs (or a longer period of time if agreed to in writing by the parties), the Forest Service may submit to Settling Defendant a written request for additional information. Settling Defendant shall respond in writing within 30 days of receiving the request (or a longer period of time as agreed to in writing by the parties). The submission of the Forest Service's request for additional information tolls the time set forth in Paragraph 59.c until 30 days after Settling Defendant responds to the request for additional information.

e.    To the extent that the Forest Service submits to Settling Defendant a written notice of an objection to any portion of a Statement of Costs, Settling Defendant shall, within 14 days of the date of the Forest Service's written notice of an objection, accept the Forest Service's findings or initiate the dispute resolution process set forth in Paragraph 76 (Dispute Resolution). If Settling Defendant accepts the Forest Service's findings or as a result of the dispute resolution process in Paragraph 76, it is determined that Settling Defendant was not entitled to expend a certain amount of funds from the Court Registry Account, or that any amount was excluded from disbursement pursuant to Paragraph 61, Settling Defendant shall send a certified or cashier check or EFT in the amount of the ineligible funds to the Forest Service, in accordance with instructions provided by the Forest Service, plus Interest on that amount covering the period

-75-

from the date of withdrawal of funds by Settling Defendant from the Court Registry Account to the date of repayment of the funds by Settling Defendant. The Forest Service shall deposit these funds in the Disbursement Account.

60.     Requests for Disbursement of Funds from Disbursement Account.

a.      After exhaustion of the Court Registry Account Settling Defendant may submit to the Forest Service a Cost Summary and Certification, as defined in Paragraph 60.b, covering Work performed pursuant to this Partial Consent Decree for reimbursement. Settling Defendant shall not include in any submission costs included in a previous Cost Summary and Certification if those costs have been previously sought or reimbursed pursuant to this Section. Settling Defendant may not submit more than one Cost Summary and Certification to the Forest Service every 45 days.

b.      Each Cost Summary and Certification shall include a complete and accurate written cost summary and certification of the necessary costs incurred and paid by Settling Defendant for the Work covered by the particular submission, excluding costs not eligible for disbursement under Paragraph 61. Each Cost Summary and Certification shall contain the following statement signed by the Chief Accounting Officer of the County's Environmental Management Department or an Independent Certified Public Accountant:

To the best of my knowledge, after thorough investigation and review of
Settling Defendant's documentation of costs incurred and paid for Work
performed pursuant to this Partial Consent Decree [Insert as appropriate,
"the Court Registry Account funds have been exhausted by the County or
"following exhaustion of the Court Registry Account" and none of these
costs have been submitted to the Waste Board for reimbursement ], I
certify that the information contained in or accompanying this submission
is true, accurate, and complete. I am aware that there are significant
penalties for knowingly submitting false information, including the
possibility of fine and imprisonment.

The Chief Accounting Officer of the County's Environmental Management

Department or Independent Certified Public Accountant shall also provide the

Forest Service a list of the documents that he or she reviewed in support of the

Cost Summary and Certification. Upon request by the Forest Service, Settling

Defendant shall submit to the Forest Service any additional information that the

Forest Service deems necessary for its review and approval of a Cost Summary

and Certification.

c. If the Forest Service finds that a Cost Summary and

Certification includes a mathematical error, costs excluded under Paragraph 61,

costs that are inadequately documented or otherwise lacking information

necessary for Forest Service review, or costs submitted in a prior Cost Summary

and Certification, it will notify Settling Defendant and provide it an opportunity

to cure the deficiency by submitting a revised Cost Summary and Certification. If

Settling Defendant fails to cure the deficiency within 14 days after being notified

-77-

of, and given the opportunity to cure, the deficiency, the Forest Service will

recalculate Settling Defendant's costs eligible for disbursement for that

submission and disburse the corrected amount to Settling Defendant.  Settling

Defendant may dispute the Forest Service's recalculation under this Paragraph

pursuant to Paragraph 76 (Dispute Resolution).   In the event Settling Defendant

decides to dispute the Forest Service's recalculation, it shall do so no later than 14

days following receipt of the Forest Service's recalculation.

   d.  Within 45 days of the Forest Service's receipt of a Cost

Summary and Certification, as defined by Paragraph 60.b, or if the Forest Service

has requested additional information under Paragraph 60.c or a revised Cost

Summary and Certification under Paragraph 60.c, within 45 days of receipt of the

additional information or revised Cost Summary and Certification, or within 45

days of the completion of the dispute resolution process initiated by Settling

Defendant pursuant to Paragraph 60.c, the Forest Service shall disburse funds

from the Disbursement Account for costs approved by the Forest Service in

accordance with this Paragraph.  In no event shall Settling Defendant be

disbursed funds from the Disbursement Account prior to exhaustion of funds in

the Court Registry account, or in excess of amounts properly documented in a

Cost Summary and Certification accepted or modified by the Forest Service, or in

excess of the maximum funds available as set forth in Paragraph 59, or excluded

Case 2:02-cv-01520-MCE-GGH Document 385-2 Filed 06/20/10 Page 84 of 137

from disbursement pursuant to Paragraph 61. Subject to the requirements of this Section, the Forest Service shall disburse the funds from the Disbursement Account to Settling Defendant in accordance with the wire transfer instructions previously provided by the Settling Defendant to the Forest Service

61. Costs Excluded from Disbursement. The following are excluded from, and shall not be sought by Settling Defendant for, disbursement from the Disbursement Account: (a) response costs paid pursuant to Section XVI (Payments for Response Costs); (b) with the exception of the transfer of $1,612,349 made by the County to the Forest Service referenced in Paragraph 58.b. of this Partial Consent Decree, any other payments made by Settling Defendant to the United States pursuant to this Partial Consent Decree, including, but not limited to, any interest or stipulated penalties paid pursuant to Section XXI (Stipulated Penalties); (c) attorneys' fees and costs; (d) costs of any response activities Settling Defendant performs that are not required under, or approved by the Forest Service pursuant to, this Partial Consent Decree; (e) costs related to Settling Defendant's litigation, settlement, development of potential contribution claims, or identification of defendants; (f) internal costs of Settling Defendant, including but not limited to, salaries, travel, or in-kind services, except for those costs that represent the work of employees of Settling Defendant directly performing the Work; (g) any costs incurred by Settling Defendant prior to the

1  date the County executes this Partial Consent Decree; or (h) any costs incurred by

2
3  Settling Defendant pursuant to Section XX (Dispute Resolution); (i) any costs for

4  which the County seeks reimbursement from the Waste Board and which are

5  reimbursed from the Waste Board Grant; or (j) any costs of Settling Defendant

6
7  paid using funds from the Court Registry Account.

8
9      62.    Termination of Disbursements from the Disbursement Account.  The

10  Forest Service's obligation to disburse funds from the Disbursement Account

11  under this Partial Consent Decree shall terminate upon the Forest Service's

12
13  determination that Settling Defendant: (a) has knowingly submitted a materially

14  false or misleading Cost Summary and Certification; (b) has submitted a

15
16  materially inaccurate or incomplete Cost Summary and Certification, and has

17  failed to correct the materially inaccurate or incomplete Cost Summary and

18  Certification within 14 days after being notified of, and given the opportunity to

19
20  cure, the deficiency; (c) failed to submit a Cost Summary and Certification as

21  required by Paragraph 60 within 30 days (or such longer period as the Forest

22
23  Service agrees) after being notified that the Forest Service intends to terminate its

24  obligation to make disbursements pursuant to this Section because of Settling

25
26  Defendant's failure to submit the Cost Summary and Certification as required by

27  Paragraph 60; or (d) has exhausted all the funds in the Disbursement Account in

28  performance of the Work.  The Forest Service's obligation to disburse funds from

-80-

the Disbursement Account shall also terminate upon the Forest Service's assumption of performance of any portion of the Work pursuant to Paragraph 95 (Work Takeover), when such assumption of performance of the Work is not challenged by Settling Defendant or, if challenged, is upheld under Section XX (Dispute Resolution). Settling Defendant may dispute the Forest Service's termination of Disbursement Account disbursements under Section XX (Dispute Resolution).

63. Recapture of Meyers Landfill Site Disbursement Account Disbursements. Upon termination of disbursements from the Disbursement Account under Paragraph 62, if the Forest Service has previously disbursed funds from the Disbursement Account for activities specifically related to the reason for termination, e.g., discovery of a materially false or misleading submission after disbursement of funds based on that submission, the Forest Service shall submit a bill to Settling Defendant for those amounts already disbursed from the Disbursement Account specifically related to the reason for termination, plus Interest on that amount covering the period from the date of disbursement of the funds by the Forest Service to the date of repayment of the funds by Settling Defendant. Within 30 days of receipt of the Forest Service's bill, Settling Defendant shall reimburse the Forest Service for the total amount billed. Payment shall be made in accordance with Paragraph 53.b. Upon receipt of

-81-

payment, the Forest Service may deposit all or any portion thereof in the Meyers

Landfill Site Special Account or the Disbursement Account.  The determination

of where to deposit or how to use the funds shall not be subject to challenge by

Settling Defendant pursuant to the dispute resolution provisions of this Partial

Consent Decree or in any other forum.  Settling Defendant may dispute the Forest

Service's determination as to recapture of funds pursuant to Paragraph 76

(Dispute Resolution).

64.    Termination of Disbursement Account.  The Forest Service shall

terminate and close the Disbursement Account upon the exhaustion of the funds

in the Disbursement Account for performance of the Work by Settling Defendant

or pursuant to paragraph 62 a. or b.   If the Forest Service's obligation to disburse

funds terminates pursuant to paragraph 62.a. or b., and after the Forest Service

completes pending requests for disbursement by Settling Defendant in accordance

with this section, if any funds remain in the Disbursement Account, the Forest

Service may transfer such funds to the Meyers Landfill Site Special Account or to

the United States Treasury.  Any transfer of funds to the Meyers Landfill Site

Special Account or the United States Treasury shall not be subject to challenge by

Settling Defendant pursuant to the dispute resolution provisions of this Partial

Consent Decree or in any other forum.

# XVIII. INDEMNIFICATION AND INSURANCE

65. Settling Defendant's Indemnification of the United States.

a. The United States does not assume any liability by entering into this Partial Consent Decree or by virtue of any designation of Settling Defendant as the Forest Service's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Settling Defendant shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Partial Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendant as the Forest Service's authorized representative under Section 104(e) of CERCLA. Further, Settling Defendant agrees to pay the United States all costs it incurs including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities

-83-

pursuant to this Partial Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Partial Consent Decree. Neither Settling Defendant nor any such contractor shall be considered an agent of the United States.

b. Notwithstanding the foregoing, the Settling Defendant reserves, and this Partial Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on the FS's selection of response actions, or the oversight or approval of the Settling Defendant's plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of

-84-

1  sovereign immunity is found in a statute other than CERCLA.

2

3        c.    The United States shall give Settling Defendant notice of any

4  claim for which the United States plans to seek indemnification pursuant to

5
6  Paragraph 66 and shall consult with Settling Defendant prior to settling such

7  claim.

8
9        66.    Settling Defendant covenants not to sue and agrees not to assert any

10 claims or causes of action against the United States for damages or

11
12 reimbursement or for set-off of any payments made or to be made to the United

13 States, arising from or on account of any contract, agreement, or arrangement

14
15 between Settling Defendant and any person for performance of Work on or

16 relating to the Site, including, but not limited to, claims on account of

17 construction delays.  In addition, Settling Defendant shall indemnify and hold

18
19 harmless the United States with respect to any and all claims for damages or

20 reimbursement arising from or on account of any contract, agreement, or

21
22 arrangement between Settling Defendant and any person for performance of

23 Work on or relating to the Site, including, but not limited to, claims on account of

24 construction delays.

25

26        67.    No later than 15 days before commencing any on-Site Work, Settling

27
28 Defendant shall secure, and shall maintain until the first anniversary of the Forest

-85-

Service's Certification of Completion of the Remedial Action for OU-1 pursuant to Subparagraph 49.b. of Section XIV (Certification of Completion) commercial general liability insurance with limits of $2 million dollars, for any one occurrence, and automobile liability insurance with limits of $2 million dollars, combined single limit, naming the United States as an additional insured with respect to all liability arising out of the activities performed by or on behalf of Settling Defendant pursuant to this Partial Consent Decree. In addition, the District shall be named as an additional insured with respect to Work to be conducted in the vicinity of the Site Portion of the Trout Creek Trunk Pipeline. In addition, for the duration of this Partial Consent Decree, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this partial Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendant shall provide to the Forest Service and the District certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendant demonstrates by evidence satisfactory to the Forest Service that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the

-86-

1   same risks but in a lesser amount, then, with respect to that contractor or

2
3   subcontractor, Settling Defendant need provide only that portion of the insurance

4   described above that is not maintained by the contractor or subcontractor.

5
6   ## XIX. FORCE MAJEURE

7       68.     "Force majeure," for purposes of this Partial Consent Decree,

8
9   is defined as any event arising from causes beyond the control of Settling

10  Defendant, of any entity controlled by Settling Defendant, or of Settling

11
12  Defendant's contractors, that delays or prevents the performance of any

13  obligation under this Partial Consent Decree despite Settling Defendant's best

14  efforts to fulfill the obligation. The requirement that Settling Defendant exercises

15
16  "best efforts to fulfill the obligation" includes using best efforts to anticipate any

17  potential force majeure and best efforts to address the effects of any potential

18
19  force majeure (1) as it is occurring and (2) following the potential force majeure,

20  such that the delay and any adverse effects of the delay are minimized to the

21
22  greatest extent possible. "Force majeure" does not include financial inability to

23  complete the Work or a failure to achieve the Performance Standards.

24
25      69.     If any event occurs or has occurred that may delay the performance

26  of any obligation under this Partial Consent Decree for which Settling Defendant

27
28  intends or may intend to assert a claim of force majeure, Settling Defendant shall

-87-

notify orally the Forest Service's Project Coordinator or, in his or her absence, the Forest Service's Alternate Project Coordinator or, in the event both of the Forest Service's designated representatives are unavailable, the Forest Service Regional Office CERCLA Coordinator at (707) 562-8729, within 48 hours of when Settling Defendant first knew that the event might cause a delay. Within 5 days thereafter, Settling Defendant shall provide in writing to the Forest Service an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendant's rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Defendant, such event may cause or contribute to an endangerment to public health, or welfare, or the environment. Settling Defendant shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that if the Forest Service, despite the late notice, is

-88-

able to assess to its satisfaction whether the event is a force majeure under Paragraph 68 and whether Settling Defendant has exercised its best efforts under Paragraph 68, the Forest Service may, in its unreviewable discretion, excuse in writing Settling Defendant's failure to submit timely notices under this Paragraph.

70.     If the Forest Service agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Partial Consent Decree that are affected by the force majeure will be extended by the Forest Service for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. If the Forest Service does not agree that the delay or anticipated delay has been or will be caused by a force majeure, the Forest Service will notify Settling Defendant in writing of its decision. If the Forest Service agrees that the delay is attributable to a force majeure, the Forest Service will notify Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

71.     If Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution), it shall do so no later than 15 days after receipt of the Forest Service's notice. In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of

the evidence that the delay or anticipated delay has been or will be caused by a

force majeure, that the duration of the delay or the extension sought was or will

be warranted under the circumstances, that best efforts were exercised to avoid

and mitigate the effects of the delay, and that Settling Defendant complied with

the requirements of Paragraphs 68 and 69, above. If Settling Defendant carries

this burden, the delay at issue shall be deemed not to be a violation by Settling

Defendant of the affected obligation of this partial Consent Decree identified to

the Forest Service and the Court.

## XX. DISPUTE RESOLUTION

72. Unless otherwise expressly provided for in this Partial Consent

Decree, the dispute resolution procedures of this Section shall be the exclusive

mechanism to resolve disputes regarding this Partial Consent Decree. However,

the procedures set forth in this Section shall not apply to actions by the United

States to enforce obligations of Settling Defendant that have not been disputed in

accordance with this Section.

73. Any dispute regarding this Partial Consent Decree shall in the first

instance be the subject of informal negotiations between the parties to the dispute.

The period for informal negotiations shall not exceed 10 days from the time the

dispute arises, unless it is modified by written agreement of the parties to the

dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute. In addition, by written agreement of the parties, the assistance of a mediator may be sought in conjunction with the informal dispute resolution process on an expedited basis.

74.     Statements of Position.

a.      In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by the Forest Service shall be considered binding unless, within 14 days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Settling Defendant. The Statement of Position shall specify Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 75 or Paragraph 76.

b.      Within 30 days after receipt of a Settling Defendant's Statement of Position, the Forest Service will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by

-91-

1  the Forest Service. The Forest Service's Statement of Position shall include a

2  statement as to whether formal dispute resolution should proceed under Paragraph

3

4  75 or 76. Within 14 days after receipt of the Forest Service's Statement of

5  Position, Settling Defendant may submit a Reply.

6

7  c.  If there is disagreement between the Forest Service and

8  Settling Defendant as to whether dispute resolution should proceed under

9

10  Paragraph 75 or 76, the Parties to the dispute shall follow the procedures set forth

11  in the paragraph determined by the Forest Service to be applicable. However, if

12

13  Settling Defendant ultimately appeals to the Court to resolve the dispute, the

14  Court shall determine which paragraph is applicable in accordance with the

15  standards of applicability set forth in Paragraphs 75 and 76.

16

17  75.  Record Review. Formal dispute resolution for disputes pertaining to

18  the selection or adequacy of any response action and all other disputes that are

19

20  accorded review on the administrative record under applicable principles of

21  administrative law shall be conducted pursuant to the procedures set forth in this

22

23  Paragraph. For purposes of this Paragraph, the adequacy of any response action

24  includes, without limitation, the adequacy or appropriateness of plans, procedures

25

26  to implement plans, or any other items requiring approval by the Forest Service

27  under this Partial Consent Decree, and the adequacy of the performance of

28  response actions taken pursuant to this Partial Consent Decree. Nothing in this

1 Partial Consent Decree shall be construed to allow any dispute by Settling

2

3 Defendant regarding the validity of the OU-1 ROD's provisions.

4          a.     An administrative record of the dispute shall be maintained by

5

6 the Forest Service and shall contain all statements of position, including

7 supporting documentation, submitted pursuant to this Section. Where

8

9 appropriate, the Forest Service may allow submission of supplemental statements

10 of position by the parties to the dispute.

11

12          b.     The Regional Forester, Region 5, or his designee ("Regional

13 Forester"), will issue a final administrative decision resolving the dispute based

14

15 on the administrative record described in Paragraph 75.a. This decision shall be

16 binding upon Settling Defendant, subject only to the right to seek judicial review

17 pursuant to Paragraph 75.c and 75.d.

18

19          c.     Any administrative decision made by the Forest Service

20 pursuant to Paragraph 75.b. shall be reviewable by this Court, provided that a

21

22 motion for judicial review of the decision is filed by Settling Defendant with the

23 Court and served on all Parties within ten days of receipt of the Forest Service's

24

25 decision. The motion shall include a description of the matter in dispute, the

26 efforts made by the parties to resolve it, the relief requested, and the schedule, if

27

28 any, within which the dispute must be resolved to ensure orderly implementation

-93-

1  of this Partial Consent Decree.  The United States may file a response to Settling

2  Defendant's motion.

3

4          d.      In proceedings on any dispute governed by this Paragraph,

5  Settling Defendant shall have the burden of demonstrating that the decision of the

6

7  Regional Forester is arbitrary and capricious or otherwise not in accordance with

8  law.  Judicial review of the Forest Service's decision shall be on the

9

10  administrative record compiled pursuant to Paragraph 75.a.

11

12      76.     Formal dispute resolution for disputes that neither pertain to the

13  selection or adequacy of any response action nor are otherwise accorded review

14  on the administrative record under applicable principles of administrative law,

15

16  shall be governed by this Paragraph.

17

18          a.      Following receipt of Settling Defendant's Statement of

19  Position submitted pursuant to Paragraph 74, the Regional Forester will issue a

20  final decision resolving the dispute.  The Regional Forester's decision shall be

21

22  binding on Settling Defendant unless, within ten days of receipt of the decision,

23  Settling Defendant files with the Court and serves on the parties a motion for

24

25  judicial review of the decision setting forth the matter in dispute, the efforts made

26  by the parties to resolve it, the relief requested, and the schedule, if any, within

27  which the dispute must be resolved to ensure orderly implementation of the

28

-94-

1  Partial Consent Decree. The United States may file a response to Settling

2  Defendant's motion.

3

4       b.    Notwithstanding Paragraph I (CERCLA Section 113(j) Record

5

6  Review of ROD and Work) of Section I (Background), judicial review of any

7  dispute governed by this Paragraph shall be governed by applicable principles of

8  law.

9

10     77.    The invocation of formal dispute resolution procedures under this

11

12 Section shall not extend, postpone or affect in any way any obligation of Settling

13 Defendant under this Partial Consent Decree, not directly in dispute, unless the

14 Forest Service or the Court agrees otherwise. Stipulated penalties with respect to

15

16 the disputed matter shall continue to accrue but payment shall be stayed pending

17 resolution of the dispute as provided in Paragraph 82. Notwithstanding the stay

18

19 of payment, stipulated penalties shall accrue from the first day of noncompliance

20 with any applicable provision of this Partial Consent Decree. In the event that

21

22 Settling Defendant does not prevail on the disputed issue, stipulated penalties

23 shall be assessed and paid as provided in Section XXI (Stipulated Penalties).

24

25                     **XXI. STIPULATED PENALTIES**

26

27     78.    Settling Defendant shall be liable for stipulated penalties in the

28 amounts set forth in Paragraphs 79 and 80 to the United States for failure to

-95-

comply with the requirements of this Partial Consent Decree specified below, unless excused under Section XIX (Force Majeure). "Compliance" by Settling Defendant shall include completion of all payments and activities required under this Partial Consent Decree, or any plan, report, or other deliverable approved under this Partial Consent Decree, in accordance with all applicable requirements of law, this Partial Consent Decree, the SOW, and any plans, reports, or other deliverables approved under this Partial Consent Decree and within the specified time schedules established by and approved under this Partial Consent Decree.

79. Penalty Amounts - Work (Including Payments and Excluding Plans, Reports and Other Deliverables).

a. The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 79.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 250.00 | 1st through 14th day |
| $ 750.00 | 15th through 30th day |
| $ 1,250.00 | 31st day and beyond |

b. Compliance Milestones.

(1) Failure to pay or timely pay any amounts due under this

-96-

1   Partial Consent Decree, including but not limited to, Paragraph 52.a, 53, and 58

2   under this Partial Consent Decree;

3

4              (2) Initiation of construction of Remedial Action for OU-1;

5

6              (3) Completion of Construction of Remedial Action;

7

8              (4) Pre-Certification Inspection;

9

10             (5) Timely payment of Past Response Costs

11             (6) Timely payment of Future Oversight Costs;

12

13             (7) providing or arranging for access.

14

15      80.      Stipulated Penalty Amounts - Plans, Reports, and Other

16              Deliverables.

17

18      The following stipulated penalties shall accrue per violation per day for

19   failure to submit timely or adequate reports or other plans or deliverables as

20   otherwise required in this Partial Consent Decree and the SOW:

21

22      Penalty Per Violation Per Day   Period of Noncompliance

23

24          $ 250.00                    1st through 14th day

25

26          $ 750.00                    15th through 30th day

27

28          $ 1,250.00                  31st day and beyond

-97-

81.    In the event that the Forest Service assumes performance of a portion or all of the Work pursuant to Paragraph 95 (Work Takeover), Settling Defendant shall be liable for a stipulated penalty in the amount of $400,000. Stipulated penalties under this paragraph are in addition to the remedies available under Paragraphs 47 (Funding for Work Takeover) and 95 (Work Takeover).

82.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under Section XI (Forest Service Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after the Forest Service's receipt of such submission until the date that the Forest Service notifies Settling Defendant of any deficiency; (b) with respect to a decision by the Regional Forester, under Paragraph 75.b or 76.a of Section XX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendant's reply to the Forest Service's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the

-98-

date that the Court issues a final decision regarding such dispute. Nothing in this Partial Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Partial Consent Decree.

83. Following the Forest Service's determination that Settling Defendant has failed to comply with a requirement of this Partial Consent Decree, the Forest Service may give Settling Defendant written notification of the same and describe the noncompliance. The Forest Service may send Settling Defendant a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether the Forest Service has notified Settling Defendant of a violation.

84. a. All penalties accruing under this Section shall be due and payable to the United States Treasury within 30 days of Settling Defendant's receipt from the Forest Service of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XX (Dispute Resolution) within the 30-day period. All payments to the United States under this Section shall be identified as "stipulated penalties" and shall be made by certified or cashier's check made payable to "United States Treasury." The check, or a letter accompanying the check shall reference the name and address of the party making payment, the Site name, and DOJ Case Number 90-11-3-06554, and shall be sent to:

-99-

United States Attorney's Office
Financial Litigation Unit
501 "I" Street, Suite 10-100
Sacramento, CA 95814

b.     At the time of payment of any stipulated penalties to the

United States, the Settling Defendant shall send copies of check(s), and any

accompanying transmittal letter(s), to the United States, Forest Service and the

Forest Service Regional Financial Management Officer as provided in Section

XVII (Notices and Submissions) of this Consent Decree.

85.     Penalties shall continue to accrue as provided in Paragraph 82 during

any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a

decision of the Forest Service that is not appealed to this Court, accrued penalties

determined to be owed shall be paid to the Forest Service within 15 days of the

agreement or the receipt of the Forest Service's decision or order;

b.     If the dispute is appealed to this Court and the United States

prevails in whole or in part, Settling Defendant shall pay all accrued penalties

determined by the Court to be owed to the Forest Service within 60 days of

receipt of the Court's decision or order, except as provided in Paragraph 85.c;

c.     If the District Court's decision is appealed by any Party,

Settling Defendant shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to the Forest Service or to Settling Defendant to the extent that they prevail.

86.    If Settling Defendant fails to pay stipulated penalties when due, Settling Defendant shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendant has timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 85 until the date of payment; and (b) if Settling Defendant fails to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 82 until the date of payment. If Settling Defendant fails to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and interest.

87.    The payment of penalties and Interest, if any, shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Partial Consent Decree.

88. Nothing in this Partial Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Partial Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622(l), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided in this Partial Consent Decree, except in the case of a willful violation of this Partial Consent Decree.

89. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Partial Consent Decree.

## XXII. COVENANTS BY PLAINTIFF

90. Covenants for Settling Defendant by United States.

In consideration of the actions that will be performed and the payments that will be made by Settling Defendant under this Partial Consent Decree, and except as specifically provided in Paragraph 94 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA for performance of

-102-

the Work, Past Response Costs and Future Oversight Costs. These covenants

shall take effect upon the receipt by the Forest Service of the payments required

by Paragraph 52.a (Payments for Past Response Costs), Paragraph 53 (Payments

for Future Oversight Costs) and any Interest or stipulated penalties due thereon

under Paragraph 55 (Interest) or Section XXI (Stipulated Penalties) as well as

Completion of the Work required under this Partial Consent Decree. These

covenants are conditioned upon the satisfactory performance by Settling

Defendant of its obligations under this Partial Consent Decree. These covenants

extend only to Settling Defendant and do not extend to any other person.

91.   United States' Pre-certification Reservations. Notwithstanding any

other provision of this Partial Consent Decree, the United States reserves, and this

Partial Consent Decree is without prejudice to, the right to institute proceedings in

this action or in a new action, or to issue an administrative order, seeking to

compel Settling Defendant to perform further response actions relating to the

Remedial Action at the Site and/or to pay the United States for additional costs of

response if, (a) prior to Certification of Completion of the Remedial Action, (i)

conditions at the Site, previously unknown to the Forest Service, are discovered,

or (ii) information, previously unknown to the Forest Service, is received, in

whole or in part, and (b) the Forest Service determines that these previously

unknown conditions or information together with any other relevant information

1   indicates that the Remedial Action is not protective of human health or the

2   environment.
3

4       92.   United States' Post-certification Reservations.  Notwithstanding any
5
6   other provision of this Partial Consent Decree, the United States reserves, and this

7   Partial Consent Decree is without prejudice to, the right to institute proceedings in
8
9   this action or in a new action or to issue an administrative order, seeking to

10  compel Settling Defendant to perform further response actions relating to the Site

11  and/or to pay the United States for additional costs of response if, (a) subsequent
12
13  to Certification of Completion of the Remedial Action, (i) conditions at the Site,

14  previously unknown to the Forest Service, are discovered, or (ii) information,

15  previously unknown to the Forest Service, is received, in whole or in part, and (b)
16
17  the Forest Service determines that these previously unknown conditions or this

18  information together with other relevant information indicate that the Remedial
19
20  Action is not protective of human health or the environment.

21
22      93.   For purposes of Paragraph 91, the information and the conditions

23  known to the Forest Service will include only that information and those

24  conditions known to Forest Service as of the date the OU-1 ROD was signed and
25
26  set forth in the OU-1 ROD for the Site and the administrative record supporting

27  the OU-1 ROD  For purposes of Paragraph 92, the information and the conditions
28
    known to the Forest Service shall include only that information and those

                                    -104-

1   conditions known to the Forest Service as of the date of Certification of

2
3   Completion of the Remedial Action and set forth in the OU-1 ROD Decision, the

4   administrative record supporting the OU-1 ROD, the post-OU-1 ROD

5
6   administrative record, or in any information received by the Forest Service

7   pursuant to the requirements of this Partial Consent Decree prior to Certification

8   of Completion of the Remedial Action.

9

10      94.    General Reservations of Rights. The United States reserves, and this

11   Partial Consent Decree is without prejudice to, all rights against Settling

12
13   Defendant with respect to all matters not expressly included within Plaintiff's

14   covenants. Notwithstanding any other provision of this Partial Consent Decree,

15
16   the United States reserves all rights against Settling Defendant with respect to:

17      a.    claims based on a failure by Settling Defendant to meet a

18
19   requirement of this Partial Consent Decree;

20      b.    liability arising from the past, present, or future disposal,

21
22   release, or threat of release of Waste Material outside of the Site;

23      c.    liability based on ownership or operation of the Site by

24
25   Settling Defendant when such ownership or operation commences after signature

26   of this Partial Consent Decree;

27

28      d.    liability based on Settling Defendant's transportation,

1 treatment, storage, or disposal, or the arrangement for the transportation,

2
3 treatment, storage, or disposal of Waste Material at or in connection with the Site,

4 other than as provided in the OU-1 ROD, the Work, or otherwise ordered by the

5 Forest Service, after signature of this Partial Consent Decree;

6

7        e.     liability for damages for injury to, destruction of, or loss of

8
9 natural resources, and for the costs of any natural resource damage assessments;

10        f.     criminal liability;

11

12        g.     liability for violations of federal or state law which occur

13 during or after implementation of the Work;

14

15        h.     liability for additional operable units at the Site, including but

16
17 not limited to the Groundwater ROD, or the final response action for the Site; and

18        i.     liability for Interim Response Costs and Future Response

19
20 Costs that the United States will incur related to the Site but are not within the

21 definition of Future Oversight Costs.

22

23     95.    Work Takeover.

24
25        a.     In the event the Forest Service determines that Settling

26 Defendant has (1) ceased implementation of any portion of the Work, or (2) is

27 seriously or repeatedly deficient or late in its performance of the Work, or (3) is

28
implementing the Work in a manner that may cause an endangerment to human

-106-

health or the environment, the Forest Service may issue a written notice ("Work Takeover Notice") to Settling Defendant. Any Work Takeover Notice issued by the Forest Service will specify the grounds upon which such notice was issued and will provide Settling Defendant a period of ten days within which to remedy the circumstances giving rise to the Forest Service's issuance of such notice.

b.    If, after expiration of the ten day notice period specified in Paragraph 95.a, Settling Defendant has not remedied to the Forest Service's satisfaction the circumstances giving rise to the Forest Service's issuance of the relevant Work Takeover Notice, the Forest Service may at any time thereafter assume the performance of all or any portion(s) of the Work as the Forest Service deems necessary ("Work Takeover"). The Forest Service will notify Settling Defendant in writing (which writing may be electronic) if the Forest Service determines that implementation of a Work Takeover is warranted under Paragraph 95.b. Funding of Work Takeover costs is addressed under Paragraph 47.

c.    Settling Defendant may invoke the procedures set forth in Paragraph 75 (Record Review), to dispute the Forest Service's implementation of a Work Takeover under Paragraph 95.b. However, notwithstanding Settling Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, the Forest Service may in its sole discretion

commence and continue a Work Takeover under Paragraph 95.b until the earlier

of (1) the date that Settling Defendant remedies, to the Forest Service's

satisfaction, the circumstances giving rise to the Forest Service's issuance of the

relevant Work Takeover Notice, or (2) the date that a final decision is rendered in

accordance with Paragraph 75 (Record Review) requiring the Forest Service to

terminate such Work Takeover.

96.     Notwithstanding any other provision of this Partial Consent Decree,

the United States retains all authority and reserves all rights to take any and all

response actions authorized by law.

## XXIII. COVENANTS BY SETTLING DEFENDANT

97.     Covenant Not to Sue by Settling Defendant.  Subject to the

reservations in Paragraph 99, Settling Defendant covenants not to sue and agrees

not to assert any claims or causes of action against the United States with respect

to the Work, Past Response Costs, Future Oversight Costs, Settling Defendant

Past Response Costs, and Settling Defendant Future OU-1 Response Costs,

Settling Defendant Excess Future OU-1 Construction Costs, and this Partial

Consent Decree, including, but not limited to:

a.     any direct or indirect claim for reimbursement from the

Hazardous Substance Superfund (established pursuant to the Internal Revenue

-108-

Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

       b.     any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Work, past response actions regarding the Site, Past Response Costs, Future Oversight Costs and this Partial Consent Decree;

       c.     any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

       d.     any direct or indirect claim for disbursement from the Meyers Landfill Site Special Account or Meyers Landfill Site Disbursement Special Account (established pursuant to this Partial Consent Decree), except as provided in Section XVII (Disbursement of Special Account Funds).

    98.   Covenant by the Forest Service.  The Forest Service agrees not to assert any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any

other provision of law with respect to the Work, Past Response Costs, Future

Oversight Costs and this Partial Consent Decree. This covenant does not

preclude demand for reimbursement from the Superfund of costs incurred by the

Forest Service in the performance of its duties (other than pursuant to this Partial

Consent Decree) as lead or support agency under the National Contingency Plan

(40 C.F.R. Part 300).

99. Except as provided in Paragraph 102 (Claims Against MSW

Generators and Transporters), the covenants in this Section shall not apply if the

United States brings a cause of action or issues an order pursuant to any of the

reservations in Section XXII (Covenants by Plaintiffs), other than in Paragraphs

94.a (claims for failure to meet a requirement of the Decree), 94.f (criminal

liability), and 94.g (violations of federal/state law during or after implementation

of the Work), but only to the extent that Settling Defendant's claims arise from

the same response action, response costs, or damages that the United States is

seeking pursuant to the applicable reservation.

100. Settling Defendant reserves, and this Partial Consent Decree is

without prejudice to: (a) claims against the United States, subject to the

provisions of Chapter 171 of Title 28 of the United States Code, and brought

pursuant to any statute other than CERCLA or RCRA and for which the waiver of

sovereign immunity is found in a statute other than CERCLA or RCRA, for

-110-

money damages for injury or loss of property or personal injury or death caused

by the negligent or wrongful act or omission of any employee of the United

States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope

of his or her office or employment under circumstances where the United States,

if a private person, would be liable to the claimant in accordance with the law of

the place where the act or omission occurred.  However, the foregoing shall not

include any claim based on the Forest Service's selection of response actions, or

the oversight or approval of Settling Defendant's plans, reports, other deliverables

or activities. Settling Defendant also reserves, and this Partial Consent Decree is

without prejudice to, contribution claims against the United States in the event

any claim is asserted by the United States against Settling Defendants pursuant to

any of the reservations in Section XXII (Covenants by Plaintiffs) other than in

Paragraphs 94.a (claims for failure to meet a requirement of the Decree), 94.f

(criminal liability), and 94.g (violations of federal/state law during or after

implementation of the Work), but only to the extent that Settling Defendant's

claims arise from the same response action, response costs or damages that the

United States is seeking pursuant to the applicable reservation.

101.  Nothing in this Consent Decree shall be deemed to constitute

preauthorization of a claim within the meaning of Section 111 of CERCLA, 42

U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

102.   <u>Claims Against MSW Generators and Transporters</u>.   Settling

Defendant agrees not to assert any claims and to waive all claims or causes of

action (including but not limited to claims or causes of action under Sections

107(a) and 113 of CERCLA) that it may have for all matters relating to the Site

against any person where the person's liability to Settling Defendant with respect

to the Site is based solely on having arranged for disposal or treatment, or for

transport for disposal or treatment, of Municipal Solid Waste ("MSW") at the

Site, if the volume of MSW disposed, treated or transported by such person to the

Site did not exceed 0.2 percent of the total volume of waste at the Site.

103.   The waiver in Paragraph 102 shall not apply with respect to any

defense, claim, or cause of action that Settling Defendant may have against any

person meeting the criteria in Paragraph 102 if such person asserts a claim or

cause of action relating to the Site against Settling Defendant.   This waiver also

shall not apply to any claim or cause of action against any person meeting the

above criteria if the Forest Service determines that: (a) the MSW contributed

significantly or could contribute significantly, either individually or in the

aggregate, to the cost of the response action or natural resource restoration at the

Site; (b) the person has failed to comply with any information request or

administrative subpoena issued pursuant to Section 104(e) or 122(e) of CERCLA,

42 U.S.C. § 9604(e) or § 9622(e), or Section 3007 of RCRA, 42 U.S.C. § 6927;

or (c) the person impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site.

## XXIV. EFFECT OF SETTLEMENT; CONTRIBUTION

104. Except as provided in Paragraph 102 (Claims against MSW Generators and Transporters), nothing in this Partial Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Partial Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Except as provided in Paragraph 102 (Claims against MSW Generators and Transporters), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Partial Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

-113-

105.   The Parties agree, and by entering this Partial Consent Decree this Court finds, that this Partial Consent Decree constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and Settling Defendant and the United States are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for matters addressed in this Partial Consent Decree.  The "matters addressed" in this Partial Consent Decree are the Work, Past Response Costs, Future Oversight Costs, Settling Defendant Past Response Costs, Settling Defendant Future OU-1 Response Costs, and Settling Defendant Excess Future OU-1 Construction Costs.

106.   Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Partial Consent Decree, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

107.   Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Partial Consent Decree, notify in writing the United States within ten days of service of the complaint on it.  In addition, Settling Defendant shall notify the United States within ten days of service or receipt of any Motion for Summary Judgment and within ten days of receipt of any order from a court setting a case for trial.

108.  Res Judicata and Other Defenses.  In any subsequent administrative

or judicial proceeding initiated by the United States for injunctive relief, recovery

of response costs, or other appropriate relief relating to the Site, Settling

Defendant shall not assert, and may not maintain, any defense or claim based

upon the principles of waiver, res judicata, collateral estoppel, issue preclusion,

claim-splitting, or other defenses based upon any contention that the claims raised

by the United States in the subsequent proceeding were or should have been

brought in the instant case; provided, however, that nothing in this Paragraph

affects the enforceability of the covenants not to sue set forth in Section XXII

(Covenants by Plaintiffs).  Settling Defendant shall not assert, plead or raise

against the United States in any fashion, whether by answer, motion or otherwise,

any defense of laches, estoppel, or waiver, or other similar equitable defense

based on the running of any statute of limitations or the passage of time in

connection with the United States' claims for Interim Response Costs.

## XXV. ACCESS TO INFORMATION

109.  Settling Defendant shall provide to the Forest Service, upon request,

copies of all records, reports, documents and other information (including

records, reports, documents, and other information in electronic form (hereinafter

referred to as "Records")) within their possession or control or that of their

contractors or agents relating to activities at the Site or to the implementation of

-115-

1  this Partial Consent Decree, including, but not limited to, sampling, analysis,

2  chain of custody records, manifests, trucking logs, receipts, reports, sample traffic

3

4  routing, correspondence, or other documents or information regarding the Work.

5  Settling Defendant shall also make available to the Forest Service, for purposes of

6

7  investigation, information gathering, or testimony, their employees, agents, or

8  representatives with knowledge of relevant facts concerning the performance of

9

10  the Work.

11      110.   Business Confidential and Privileged Documents.

12

13      a.     Settling Defendant may assert business confidentiality claims

14  covering part or all of the Records submitted to Plaintiff under this Partial

15

16  Consent Decree to the extent permitted by and in accordance with Section

17  104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).

18

19  Records determined to be confidential by the Forest Service will be afforded the

20  protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality

21

22  accompanies Records when they are submitted to the Forest Service, or if the

23  Forest Service has notified Settling Defendant that the Records are not

24  confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R.

25

26  Part 2, Subpart B, the public may be given access to such Records without further

27  notice to Settling Defendant.

28

-116-

       b.     Settling Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege in lieu of providing Records, they shall provide Plaintiff with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name, of each addressee and recipient; (5) a description of the contents of the Record: and (6) the privilege asserted by Settling Defendant. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only. Settling Defendant shall retain all Records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendant's favor.

       c.     No Records created or generated pursuant to the requirements of the Partial Consent Decree shall be withheld on the grounds that they are privileged or confidential.

111. No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXVI. RETENTION OF RECORDS

112.  Until ten years after Settling Defendant's receipt of the Forest

Service's notification pursuant to Paragraph 49.b of Section XIV (Certification of

Completion of the Remedial Action), Settling Defendant shall preserve and retain

all non-identical copies of Records (including Records in electronic form) now in

its possession or control or which come into its possession or control that relate in

any manner to its liability under CERCLA with respect to the Site, provided,

however, that Settling Defendant must retain, in addition, all Records that relate

to the liability of any other person under CERCLA with respect to the Site.

Settling Defendant must also retain, and instruct its contractors and agents to

preserve, for the same period of time specified above all non-identical copies of

the last draft or final version of any Records (including Records in electronic

form) now in its possession or control or which come into its possession or

control that relate in any manner to the performance of the Work, provided,

however, that Settling Defendant (and its contractors and agents) must retain, in

addition, copies of all data generated during the performance of the Work and not

contained in the aforementioned Records required to be retained. Each of the

above record retention requirements shall apply regardless of any retention policy

to the contrary.

113.  At the conclusion of this record retention period, Settling Defendant

shall notify the United States at least 90 days prior to the destruction of any such

records or documents, and, upon request by the United States, Settling Defendant

shall deliver any such Records to the Forest Service. Settling Defendant may

assert that certain Records are privileged under the attorney-client privilege or

any other privilege recognized by federal law. If Settling Defendant asserts such

a privilege, it shall provide the Plaintiff with the following: (a) the title of the

Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company

or firm), and address of the author of the Record; (d) the name and title of each

addressee and recipient; (e) a description of the subject of the Record; and (f) the

privilege asserted by Settling Defendant. If a claim of privilege applies only to a

portion of a Record, the Record shall be provided to the United States in redacted

form to mask the privileged portion only. Settling Defendant shall retain all

Records that it claims to be privileged until the United States has had a reasonable

opportunity to dispute the privilege claim and any such dispute has been resolved

in the Settling Defendant's favor. However, no Records created or generated

pursuant to the requirements of this Partial Consent Decree shall be withheld on

the grounds that they are privileged or confidential

114. Settling Defendant hereby certifies individually that, to the best of its

knowledge and belief, after thorough inquiry, it has not altered, mutilated,

discarded, destroyed or otherwise disposed of any Records (other than identical

copies) relating to its potential liability regarding the Site since the earlier of

notification of potential liability by the United States or the filing of suit against it

regarding the Site and that it has fully complied with any and all Forest Service

requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42

U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXVII. NOTICES AND SUBMISSIONS

115.   Whenever, under the terms of this Partial Consent Decree, written

notice is required to be given or a report or other document is required to be sent

by one Party to another, it shall be directed to the individuals at the addresses

specified below, unless those individuals or their successors give notice of a

change to the other Parties in writing.  All notices and submissions shall be

considered effective upon receipt, unless otherwise provided.  Written notice as

specified in this Section shall constitute complete satisfaction of any written

notice requirement of the Partial Consent Decree with respect to the United

States, the Forest Service, and Settling Defendant.  Notices required to be sent to

the Forest Service, and not the United States, under the terms of this Partial

Consent Decree should not be sent to the U.S. Department of Justice.

1 | As to the United States:

2 |                           Chief, Environmental Enforcement Section
3 |                           Environment and Natural Resources Division
                              U.S. Department of Justice
4 |                           P.O. Box 7611
5 |                           Washington, D.C. 20044-7611
                                       Re: DJ # 90-11-3-06554
6 |        and
7 |

8 |                           Chief, Environmental Defense Section
9 |                           United States Department of Justice
                              Environment and Natural Resources Division
10 |                          P.O. Box 23986
11 |                          Washington D.C. 20026-3986
                                       Re: DJ # 90-11-8-05384
12 | As to the U.S.D.A., Forest Service:

13 |                          Dennis Geiser
14 |                          Regional Environmental Engineer
                              Pacific Southwest Region, Region 5
15 |                          1323 Club Drive
16 |                          Vallejo, CA 94592

17 |

18 |
         and                 Rose Miksovsky
19 |                          Staff Attorney
20 |                          Office of the General Counsel
                              33 New Montgomery Street, 17th Floor
21 |                          San Francisco, CA 94105

22 |

23 |

24 |

25 |

26 |

27 |

28 |

-121-

As to the Regional Financial Management Officer, USDA, Forest Service:

       John De La Torre
       Director, Program Development & Budget
       Pacific Southwest Region, Region 5
       1323 Club Drive
       Vallejo, CA 94592

As to the Settling Defendant:     Michael Ciccozzi
                              Deputy County Counsel
                              Office of County Counsel
                              330 Fair Lane
                              Placerville, CA 95667

                              Greg Stanton, Deputy Director
                              Environmental Management Dept.
                              El Dorado County
                              2850 Fairlane Court, Bldg. C.
                              Placerville, CA 95667

                              Thomas F. Vandenburg
                              Dongell, Lawrence, Finney LLP
                              707 Wilshire Blvd, 45th Floor
                              Los Angeles, CA 90017

                              Gerri Silva, Director
                              Environmental Management Dept.
                              El Dorado County
                              2850 Fairlane Court, Bldg. C
                              Placerville, CA 95667

## XXVIII. Retention of Jurisdiction

116. This Court retains jurisdiction over both the subject matter of this partial Consent Decree and Settling Defendant for the duration of the performance of the terms and provisions of this Partial Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Partial Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XX (Dispute Resolution).

## XXIX. Appendices

117. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the OU1 ROD.

"Appendix B" is a Map of the Site.

"Appendix C" is the SOW.

"Appendix D" [RESERVED].

"Appendix E" is the initial performance guarantee.

"Appendix F" is a map generally depicting the Site Portion of Trout Creek

-123-

1 Trunk Pipeline.

## XXX. COMMUNITY RELATIONS

118. If requested by the Forest Service, Settling Defendant shall participate in community relations activities pursuant to the community relations plan to be developed by the Forest Service. The Forest Service will determine the appropriate role for Settling Defendant under the Plan. Settling Defendant shall also cooperate with the Forest Service in providing information regarding the Work to the public. As requested by the Forest Service, Settling Defendant shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by the Forest Service to explain activities at or relating to the Site. Costs incurred by the United States under this Section, including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. §9617(e), shall be considered Future Oversight Costs that Settling Defendant shall pay pursuant to Section XVI (Payments for Response Costs)

## XXXI. MODIFICATION

119. Except as provided in Paragraph 12 (Modification of SOW or Related Work Plans), material modifications to this Partial Consent Decree, including the OU-1 SOW, shall be in writing, signed by the United States and

-124-

1  Settling Defendant, and shall be effective upon approval by the Court. Except as

2
3  provided in Paragraph 12 (Modification of SOW or Related Work Plans),

4  non-material modifications to this Partial Consent Decree, including revisions to

5  Section XVII (Funding and Disbursement of Special Account Funds) and the OU-

6
7  1 SOW, shall be in writing and shall be effective when signed by duly authorized

8  representatives of the United States and Settling Defendant. A modification to

9
10  the OU-1 SOW shall be considered material if it fundamentally alters the basic

11  features of the selected remedy within the meaning of 40 C.F.R. §

12
13  300.435(c)(2)(ii). Before providing its approval to any modification to the OU-1

14  SOW, the United States will provide the State with a reasonable opportunity to

15  review and comment on the proposed modification.

16

17  120. Nothing in this Partial Consent Decree shall be deemed to alter the

18  Court's power to enforce, supervise or approve modifications to this Partial

19
20  Consent Decree.

21

22

23

24

25

26

27

28

## XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

121.   This Partial Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Partial Consent Decree disclose facts or considerations which indicate that the Partial Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Partial Consent Decree without further notice.

122.   If for any reason the Court should decline to approve this Partial Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII. SIGNATORIES/SERVICE

123.   The undersigned representatives of Settling Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certify that they are fully authorized to enter into the terms and conditions of this Partial Consent Decree and to execute and legally bind such Party to this document.

-126-

124. Settling Defendant agrees not to oppose entry of this Partial Consent Decree by this Court or to challenge any provision of this Partial Consent Decree unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Partial Consent Decree.

125. Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Partial Consent Decree. Settling Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

## XXXIV. FINAL JUDGMENT

126.    This Partial Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Partial Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Partial Consent Decree.

127.    Upon entry of this Partial Consent Decree by the Court, this Partial Consent Decree shall constitute a final judgment between and among the United States and Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 20 th DAY OF August, 2010.

Honorable Morrison C. England, Jr.
United States District Judge,
Eastern District of California

-128-

1 | FOR THE UNITED STATES OF AMERICA

2

3   _6/17/10_                          Ignacia S. Moreno
    Date                              IGNACIA S. MORENO

4                                     Assistant Attorney General

5                                     Environment and Natural Resources

6                                       Division
                                      U.S. Department of Justice
7                                     Washington, D.C.  20530

8

9   _6/28/10_                          Karl J. Fingerhood
10  Date                              KARL J. FINGERHOOD

11                                    Trial Attorney,

12                                    Environmental Enforcement Section

13                                    Environment and Natural Resources
                                        Division
14                                    U.S. Department of Justice

15

16  **6/28/10**
17

18  Date                              ANDREW J. DOYLE

19                                    Trial Attorney
                                      Environmental Defense Section
20                                    Environment and Natural Resources

21                                      Division
                                      U.S. Department of Justice
22

23

24

25

26

27

28

-129-

1 | FOR THE UNITED STATES DEPARTMENT OF AGRICULTURE, FOREST
2 | SERVICE

3

4 | Dated: 6/25/2010

5

RANDY MOORE
6 | Regional Forester
7 | U.S. Department of Agriculture
Forest Service
8 | 1323 Club Drive
9 | Vallejo, California 94592

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-130-

1    FOR THE COUNTY OF EL DORADO, CALIFORNIA

2

3    Date:    5-18-10

4

5    Signature:    Raymond J. Nutting

6

7    Name (print):    Raymond J. Nutting

8    Title:    Vice Chair

9    Address:    330 Fair Lane

10            Placerville, CA 95667

11

12

13    Agent Authorized To Accept Service On Behalf Of

14    Above-Signed Party:

15    Name (print):    Suzanne Allen de Sanchez

16    Title:    Clerk of the Board

17    Address:    330 Fair Lane

18            Placerville, CA 95667

19

20

21

22

23

24

25

26

27

28

-131-

# RECORD OF DECISION
## for
# MEYERS LANDFILL
# OPERABLE UNIT 1 – LANDFILL WASTE MASS
El Dorado County, California

UNITED STATES DEPARTMENT OF AGRICULTURE
FOREST SERVICE, REGION 5
LAKE TAHOE BASIN MANAGEMENT UNIT
South Lake Tahoe, California

November 2007

USDA