ROBERT G. DREHER
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

KARL J. FINGERHOOD (PA Bar No. 63260)
Senior Counsel, Environmental Enforcement Section
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 514-7519
Facsimile: (202) 514-0097
karl.fingerhood@usdoj.gov

ANDREW J. DOYLE (Fla. Bar No. 84948)
Attorney, Environmental Defense Section
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, DC  20044
Telephone:  (202) 514-4427
Facsimile:  (202) 514-8865
andrew.doyle@usdoj.gov

(Additional counsel on following page)

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br>   v.<br><br>EL DORADO COUNTY, CALIFORNIA; and CITY OF SOUTH LAKE TAHOE, CALIFORNIA,<br><br>       Defendants.<br><br>AND RELATED ACTIONS | Case No.: S-01-1520 MCE DAD<br><br>**JOINT STATUS REPORT** |

JOINT STATUS REPORT

THOMAS M. BRUEN (SBN: 63324)
ERIK A. REINERTSON (SBN: 218031)
LAW OFFICES OF THOMAS M. BRUEN
A Professional Corporation
1990 N. California Boulevard, Suite 620
Walnut Creek, CA  94596
Telephone:      (925) 295-3137
Facsimile:       (925) 295-3132
Email:             tbruen@tbsglaw.com
                     ereinertson@tbsglaw.com

EDWARD KNAPP, County Counsel (SBN: 057157)
MICHAEL J. CICCOZZI, Deputy County Counsel.  (SBN: 134859)
COUNTY OF EL DORADO
330 Fair Lane
Placerville, CA 95667
Telephone:      (530) 621-5770
Email:             Michael.Ciccozzi@edcgov.us

Attorneys for Defendant and Third Party Plaintiff
EL DORADO COUNTY, CALIFORNIA

JOINT STATUS REPORT

1     Pursuant to the Order of the Magistrate Judge, entered April 16, 2014 (ECF No. 437),
2  Plaintiff United States of America ("United States") and Defendant El Dorado County, California
3  ("County") hereby submit this Joint Status Report.
4     The parties have met and conferred regarding the matters outlined in the Order, and have the
5  following information to submit to the Court:

## I. CURRENT STATUS OF THE PARTIES' DISPUTE

First, the Magistrate Judge's Order requests that the parties "provide[] an update as to the status of the parties' dispute." (ECF No. 437 at 2, line 4.)

On April 3, 2014 (ECF No. 436), Chief Judge England issued an Order referring to the Magistrate Judge the "separate evidentiary hearing" referenced in Chief Judge England's Order of July 8, 2011 (ECF No. 416). The April 2014 Order provides that the Magistrate Judge shall "make recommendations . . . for apportionment of additional necessary response costs incurred or to be incurred at the landfill site as between Plaintiff United States and Defendant County of El Dorado." (ECF No. 436, page 2, lines 19-22.)

The instant dispute remains unresolved. The United States and the County have been engaged in private mediation in an attempt to resolve the matter without the need for further proceedings. However, to date the mediation has not resulted in a settlement, but the parties are continuing with the mediation process.

Meanwhile, following the July 2011 Order, and to date, the County has continued with construction of the closure cap over the Meyers landfill site. The County's position is that it has done so because halting construction midway through the Project would ultimately cause even further and substantial escalations in the total Project costs. (The United States was not privy to the County's decision to continue construction following the July 2011 Order.) Construction is now substantially complete, and the County is now seeking a certificate of completion of construction from the United States Forest Service.

## II. SEPARATE PROPOSED DISCOVERY SCHEDULES

Second, the Magistrate Judge's Order requests that the parties provide "joint or separate proposed discovery schedules." (ECF No. 437, page 2, lines 4-5.) Because the parties could not

1

1  agree on a joint proposed discovery schedule, below they have submitted separate proposed
2  discovery schedules.

3        **A.     United States' Position and Proposed Discovery Schedule**

4        The United States urges the Court to limit the scope of discovery.

5        The instant dispute began after August 2010, when the Court approved a Partial Consent
6  Decree ("PCD") between the United States, on behalf of the United States Forest Service, and El
7  Dorado County.  (ECF No. 389.)  Generally speaking, the PCD resolved the United States'
8  CERCLA remedial and cost recovery claims against the County regarding an operable unit at the
9  Meyers landfill site, which the County operated for decades on federal land.  The PCD also resolved
10 the County's counterclaim for monetary contribution from the Forest Service.  Less than a year after
11 entry of the decree, on April 27, 2011, the County filed a Motion for Construction, Enforcement,
12 and Modification of the PCD.  (ECF Nos. 395-401, 405-10.)  Generally speaking, the County
13 complained that the landfill contained more waste than initially estimated.  The United States
14 opposed the motion, acknowledging the updated estimate but explaining that CERCLA requires
15 cleanup until human health performance standards are achieved, and that the PCD fully addresses
16 such contingency.  (ECF Nos. 403, 404, 415.)

17       On July 8, 2011, Chief Judge England issued an Order granting the County's motion.  (ECF
18 No. 416.)  The Order, in pertinent part, "suspended" "[t]he County's obligation [under the Partial
19 Consent Decree] to continue construction of the Design, or any new designs prepared by the
20 [United States Forest Service] for contaminant remediation on the former Meyers landfill site."
21 (ECF No. 416, page 13, lines 5-7.)  The Court further ordered that "the government's liability for
22 additional costs paid by the County to construct the Final 100% Remedial Design, and for any costs
23 incurred by the County in completing said Design in the future, will be determined by separate
24 evidentiary hearing." (ECF No. 416, page 13, lines 8-12.)  The United States appealed the July 2011
25 Order.  Following briefing and oral argument, the Ninth Circuit dismissed the appeal as premature.
26 704 F.3d 1261 (9th Cir. 2013).

27       The question before the Court, as recently clarified by Chief Judge England in his April
28 2014 Order, is the appropriate "apportionment of additional necessary response costs incurred or to

JOINT STATUS REPORT

1  be incurred at the landfill site as between Plaintiff United States and Defendant County of El
2  Dorado." ECF No. 436, page 2, lines 20-22.  The PCD explicitly and unambiguously addresses
3  apportionment; it requires the United States to pay 20 percent of cost overruns, i.e., the "costs of
4  response [the County] incurs after the Effective Date [of the PCD], in construction of the Remedial
5  Action, which exceed the OU-1 cost set forth in the Remedial Design of $5,500,000 and which
6  would be compensable as 'necessary costs of response . . . consistent with the national contingency
7  plan' within the meaning of CERCLA section 107(a)(4), 42 U.S.C. Section 9607(a)(4)."  (PCD,
8  ECF No. 389, pages 14 and 68.)  Although Chief Judge England's July 2011 Order suspended the
9  County's construction obligations, it did not suspend or even explicitly address the PCD's
10 apportionment formula for cost overruns.  Moreover, for the first time, Chief Judge England's April
11 2014 Order makes clear that "apportionment" is to be the focus of the evidentiary proceeding.

12       The United States acknowledges that Chief Judge England's July 2011 Order could be read,
13 as the United States argued to the Ninth Circuit, as modifying the PCD's apportionment formula.
14 However, the April 2014 Order now indicates that the July 2011 Order was never intended to
15 resolve apportionment.  Otherwise, there would be no need for the Magistrate Judge to make
16 recommendations about the appropriate "apportionment of additional necessary response costs
17 incurred or to be incurred at the landfill site as between Plaintiff United States and Defendant
18 County of El Dorado."  (ECF No. 436, page 2, lines 20-22.)

19       The County's position that Chief Judge England has already decided that the United States
20 must bear 100 percent of construction cost overruns ignores Chief Judge England's most recent
21 Order, not to mention the plain and unambiguous agreement that the County itself negotiated with
22 the United States, which specifically speaks to construction cost overruns.

23       Regardless of the parties' <u>legal</u> dispute about whether the United States must pay 20 or 100
24 percent of construction cost overruns, however, the <u>evidentiary</u> aspect of the question is relatively
25 narrow.  <u>First</u>, the County must establish the amount of construction costs that it has <u>incurred</u> since
26 August 20, 2010, when the Court entered the Partial Consent Decree.  Such costs would include, in
27 Chief Judge England's words, "additional costs paid by the County to construct the Final 100%
28 Remedial Design, and for any costs incurred by the County in completing said design in the future."

1  (ECF No. 416, page 13, lines 8-12.)  However, this amount would not include, and the County may
2  not seek to collect, monies the County received from outside sources and thus did not incur, i.e., the
3  Court Registry Account ($1,250,000), the Disbursement Account ($3,165,530), and the Waste
4  Board Grant ($750,000).  The County also received $1,651,000 from its insurers – an outside source
5  – and therefore the United States reserves it right to challenge the County's ability to recover any
6  portion of that amount from the United States.  In addition, the County may not seek to collect any
7  operation and maintenance ("O & M") costs it incurred or will incur because the PCD requires the
8  County to pay those in full, and O & M costs were not part of the County's April 2011 motion (or
9  Chief Judge England's Orders).

10      Second, the County must establish that the construction costs it incurred were necessary and
11 consistent with the national contingency plan.  Assuming these costs were expended consistent with
12 the remedial designs, the United States expects this burden to be a minimal one (since the United
13 States Forest Service oversaw the designs).

14      Given the straightforward nature of the question under either party's formulation – i.e.,
15 whether the United States must pay 20 percent of qualifying construction costs over $5,500,000, as
16 the United States argues, or whether the United States must pay 100 percent of construction cost
17 overruns, as the County argues – the County's request for broad discovery is, at best, premature.
18 Instead, at this time, only limited discovery should be allowed, as follows:

19      A.   County's Initial Disclosures:
20           By July 16, 2014, the County shall disclose to the United States:
21      a. a detailed description of the relief the County will or may seek at the hearing,
22         including but not limited to a computation and description of each category of
23         monetary claims.
24      b. all documentation related to the County's two-part burden as set forth above.
25      c. a list of all fact witnesses known to the County at the time of this disclosure that the
26         County will call or may call (and label them as "will call" or "may call") along with
27         the witnesses' title, contact information, and a brief description of the subjects of
28         their knowledge.

4

JOINT STATUS REPORT

1         d.     The County shall supplement its disclosures in a timely fashion pursuant to Fed. R.
2                Civ. P. 26(e)(1)(A).

Although the question before the Court is straightforward, the United States expects the documentation related to the costs or other relief claimed by the County to be voluminous and may require the assistance of consultant(s).  The United States shall, within 60 days of receiving the County's initial disclosures, meet and confer with the County about potentially stipulating to the sum involved.  If the parties cannot agree to a stipulation (or agree to a stipulation that does not fully resolve the evidentiary aspects of the question presented), then the Parties shall, within 20 days of concluding their meet-and-confer, file a Supplemental Status Report with the Magistrate Judge as well as a proposed (joint or separate) schedule for the United States' Initial Disclosures and discovery as to any matters which remain in dispute.  A telephone status conference call with the Magistrate Judge could be held subsequent to the filing of the Supplemental Status Report, if necessary.

In the alternative, if the Magistrate Judge is <u>not</u> inclined to accept the <u>legal</u> position on apportionment proffered by the United States (20 percent) or the County (100 percent), then the United States urges the Court to first order the parties to submit briefs and arrive at a report and recommendation regarding the appropriate apportionment approach <u>before</u> the Court decides whether, and to what extent, discovery is needed.

**B.     County's Position and Proposed Discovery Schedule**

**1.     Background of the Dispute**.

In partial settlement of the United States' CERCLA case brought on behalf of the United States Forest Service ("Forest Service") against the County and the City of South Lake Tahoe, the County and the United States entered into a PCD, under which the County agreed to construct a closure cap over the former Meyers landfill (the "Landfill"), located on Forest Service property (the "Project"). The goal of the Project was to prevent groundwater and snowmelt from coming into contact with the buried waste mass. Pursuant to the PCD, the County was to build the Project pursuant to the Forest Service's 100% Final Remedial Design Plan created by the Forest Service and its engineering firm (the "100% Final Remedial Design" or "Design"). The County requested

permission to design the Project, but the Forest Service maintained that its own engineers would prepare the Design.

Following a lengthy mediation process, the parties agreed to submit the Forest Service's detailed 100% Final Remedial Design plans and drawings through the County for fixed price competitive bids. The concept was that only by knowing the actual price of the closure cap construction could the parties determine their respective contributions to the overall settlement, and the County could in turn settle with its insurance carriers to raise money for the County's contribution. The County solicited bids for the construction of the Project pursuant to the State Public Contracts Code, which requires competitive bidding based on detailed plans and specifications for public work projects.  Bidders based their bids on the Remedial Design.  This design was an 800+ page document that contained detailed design drawings and specifications, along with certified engineering estimates of costs and quantities, for the bidding process. Once these bids were received, and the anticipated costs of construction of the Remedial Design were known to the Parties, the County settled with its insurance carriers to help fund the construction project, foregoing the ability to raise additional insurance funds for the Project, and then entered into the PCD.

The County, after beginning construction on the Project, found that serious survey, site investigation and engineering errors had been incorporated into the Remedial Design provided to the County by the Forest Service, that have increased the County's costs from the original bid amounts that totaled approximately $3.43 million.  These costs had reached approximately $7.5 million at the time of the hearing on the County's motion. The estimated costs of the Project have now risen to approximately $10,500,000, and could go even higher.

The County sought relief from the Court by filing a Motion for Construction, Enforcement, and Modification of Partial. (ECF Nos. 395-401, 405-10.) The basis of the motion was that the PCD and the Remedial Design contain implied and express warranties and representations that the Remedial Design was free of defects and was prepared in accordance with the standard of care for professional engineers and surveyors. The United States opposed the motion.  (ECF Nos. 403, 404, 415.)  On July 8, 2011, Chief Judge England issued a Memorandum and Order granting the

County's motion. (ECF No. 416.) The Order, among other things, "suspended" "[t]he County's obligation [under the Partial Consent Decree] to continue construction of the Design, or any new designs prepared by the [United States Forest Service] for contaminant remediation on the former Meyers landfill site." (ECF No. 416, page 13, lines 5-7.) The Court further ordered "the government's liability for additional costs paid by the County to construct the Final 100% Remedial Design, and for any costs incurred by the County in completing said Design in the future, will be determined by separate evidentiary hearing." (ECF No. 416, page 13, lines 8-12.)

### 2. County's Position on Discovery and Proposed Discovery Schedule.

The United States' position on the nature of evidentiary hearing and the scope of discovery attempts to re-litigate the County's successful motion and redesign the evidentiary hearing contemplated by Judge England in a way that would completely eviscerate the Court's Order. Judge England's ruling, in relevant parts, states as follows:

> Where a project owner like the USFS provides detailed design plans and specifications,[1] the government, and not the contracting party (here the County) bears the risk if such plans and specifications are ultimately determined to be deficient. (ECF 416, at p. 8:17-20.)

\*\*\*

> There can be no question here, given the evidence before the Court, that the USFS Design contained significant errors resulting in substantially increased costs to the County in construction of the Design. (*Id.,* at p. 11:24-27.)

\*\*\*

> The Court finds that it would be inequitable under the circumstances to assign to the County the responsibility for both those errors and others contained within the USFS Design. Such responsibility must instead be borne by the government, *and the PCD has to be modified accordingly.* (*Id.,* at p. 12:17-21 [Emphasis added].)

\*\*\*

> The government's liability for additional costs paid by the County to construct the Final 100% Remedial Design, and for any costs incurred by the County in completing said Design in the future, will be determined by separate evidentiary hearing. (*Id.*, at p. 13:8-12.)

---

[1] The Court then held that the United States provided detailed design plans and specifications. (ECF 416, p. 11:11-23.)

7

JOINT STATUS REPORT

1    Given this Order from the Court, the interpretation put forward by the United States above,
2  i.e., that the "separate evidentiary hearing" is merely an application of the PCD's provision that
3  apportions 80% of cost overruns over $550,000 caused by the United States' defective Design to the
4  County, is simply not credible. Such a reading is without any textual support in the Court's Order.
5  The PCD has been modified so that the United States is responsible for *all* costs that stem from the
6  defects in the 100% Remedial Design. (ECF 416, p. 12:17-21.) The Court's order assigning this
7  case to the Judge Magistrate does not alter the language of the Order granting the County's motion.
8    The County's position is that the Judge England's separate evidentiary hearing is to
9  determine the amount of cost overruns that were caused by the defects contained in the United
10 States' 100% Remedial Design. In other words, the Court has already determined that the United
11 States is liable for cost overruns caused by the defective Design. What is left then is to calculate the
12 amount of cost overruns that were caused by the defects in the Design.
13   As such, the County should be entitled to broad discovery. The defects in the original
14 Design led to several redesigns of the Project as the Project continued. For instance, the extent of
15 the waste was underestimated—therefore, as the true extent of waste was discovered, the height of
16 the Project increased, leading to steeper slopes that required a more robust (and more expensive)
17 drainage system. For the County to accurately trace (and prove) which cost overruns were caused
18 by defects in the original Remedial Design, it requires discovery into the formation of the Remedial
19 Design, and communications and documents relating to each subsequent redesign.
20   Limiting the scope of discovery at this stage would also be premature. If the United States
21 believes that County's discovery requests are overbroad or irrelevant, they are free to object to the
22 requests, and the Judge Magistrate would then handle the discovery dispute like any other discovery
23 dispute, that is, pursuant to the Federal Rules of Civil Procedure.
24   The County proposes the following discovery schedule and hearing procedure, which the
25 United States previously agreed to (with different dates, of course) in 2011 before it appealed the
26 Court's Order (ECF 421, Joint Status Report, July 28, 2011):
27   (1).   County Initial Disclosures.
28   By June 1, 2014, the County shall disclose to the United States:

      a.      A detailed description of all relief it will or may seek at the hearing, including but not limited to a computation and description of each category of costs or damages by the County.

      b.      A list of all fact witnesses it will call or may call (and label them as "will call" or "may call") along with witnesses' title, contact info, and a brief description of their knowledge.

      c.      A copy of all non-privileged documents that the County may use to support its requested relief. Upon request, the County shall produce a privilege log to the United States.

      d.      The County shall supplement its disclosures in a timely fashion pursuant to Fed. R. Civ. P. 26(e)(1)(A).

(2).    <u>United States Initial Disclosures.</u>

By July 1, 2014, the Untied States shall disclose to the County:

      a.      A detailed description of all defenses the government may or will assert at the hearing with respect to the County's computation and claims for relief.

      b.      A list of all fact witnesses it will call or may call (and label them as "will call" or "may call") along with witnesses' title, contact info, and a brief description of their knowledge.

      c.      A copy of all non-privileged documents that the United States may use to support its defense and opposition to the County's requested relief. Upon request, the United States shall produce a privilege log to the County.

      d.      The United States shall supplement its disclosures in a timely fashion pursuant to Fed. R. Civ. P. 26(e)(1)(A).

(3).    <u>Non-expert Discovery.</u>

Commencing on August 1, 2014 and extending to October 1, 2014, either party may conduct discovery in accordance with the Federal Rules of Civil Procedure. The limits in discovery in the Federal Rules shall apply absent stipulation of the parties or order of the Court.

4.    <u>Expert Discovery.</u>

      a.      By December 1, 2014, the County will disclose its experts and provide a

1  written report of each expert witness to the Untied States, covering the topics about which the
2  expert will or may testify about pursuant to Fed R. P. 26(a)(2)(B).
3           b.      By January 1, 2015, the United States will disclose its experts and provide a
4  written report of each expert witness to the County, covering the topics about which the expert will
5  or may testify about pursuant to Fed R. P. 26(a)(2)(B).
6           c.      By February 1, 2015, the County will disclose its rebuttal experts and provide
7  a written report of each expert witness to the Untied States, covering the topics about which the
8  expert will or may testify about pursuant to Fed R. P. 26(a)(2)(B).
9           d.      Depositions of experts may commence upon the County's disclosure of its
10 rebuttal experts and will end on March 1, 2015.
11      5.      Pre-Hearing Conference.
12         Following the completion of expert discovery, the parties will attend a pre-hearing
13 conference before the Magistrate Judge, and shall be prepared to discuss the necessity of a full
14 evidentiary hearing versus the submission of the matter based on declaration, depositions and briefs,
15 and associated scheduling issues.  Also, given the tight time schedule, extensions of time to
16 complete discovery where there are discovery disputes and motions would be allowed per
17 subsequent order of the Magistrate.

JOINT STATUS REPORT

| | |
|---|---|
| DATED: May 9, 2014 | UNITED STATES OF AMERICA |
| | ROBERT G. DREHER<br>Acting Assistant Attorney General<br>Environment & Natural Resources Division<br>U.S. Department of Justice |
| | /s/ KARL J. FINGERHOOD<br>ANDREW J. DOYLE, Attorney<br>KARL J. FINGERHOOD, Attorney<br>Environment & Natural Resources Division<br>U.S. Department of Justice |
| DATED: May 9, 2014 | LAW OFFICES OF THOMAS M. BRUEN,<br>A Professional Corporation |
| | /s/ Thomas M. Bruen<br>THOMAS M. BRUEN<br>Attorneys for Defendant<br>EL DORADO COUNTY |